MOSSHAMER *v.* WABASH RAILWAY CO.

1. INJUNCTION—BREACH OF EMPLOYMENT CONTRACT—LABOR UNIONS —ADEQUATE REMEDY AT LAW—MASTER AND SERVANT.
    Members of a labor union are not entitled to an injunction restraining an employer from breaching its contract with the union, even if it be conceded that said contract was made as their agent and for their benefit, since the court of law is always open to recover damages for the breach, and the court of equity will not thus interfere with the running of the employer's business.

On the question of agreements between employer and trade union, see note in 45 L. R. A. (N. S.) 184.

2. MASTER AND SERVANT—LABOR UNIONS — RIGHTS OF MEMBERS UNDER AGREEMENT—CONSTRUCTION — JURISDICTION OF ORGANIZATION TO SETTLE DISPUTES.

Where, under agreement by locomotive engineers' brotherhood and locomotive firemen's brotherhood between themselves and between the railroad companies employing them, controversies arose as to seniority rights and as to whether road engineers by right of seniority could displace yard engineers in times of business depression, and also as to whether yard engineers could in turn displace firemen under like conditions, the whole matter is *held*, to have been properly submitted to the chief executives of the two brotherhoods for decision under the usages, laws and agreements of the two brotherhoods.

3. SAME—CONSTRUCTION OF AGREEMENT.

The construction placed upon said agreement by said two executive officers of the brotherhoods that yard engineers had priority in yard service over road engineers, *i. e.*, that road engineers could not come into the yard and displace yard men, but that where there were more jobs in the yard than there were yard engineers and road engineers came into the yard to perform yard service, said road engineers would not thereby lose their seniority, *held*, proper.

4. APPEAL AND ERROR — INJUNCTION — REVERSAL OF INJUNCTION NOT CONCLUSIVE AS TO QUESTIONS URGED IN MOTION TO DISMISS THE BILL.

In reversing a decree in favor of plaintiffs for an injunction, the Supreme Court, as trier of the law and facts, hearing the case *de novo*, will dispose of the case upon the facts as they appear in the record without determining the legal questions urged in defendants' motion to dismiss, which are still open for decision as they may arise.

Appeal from Wayne; Smith (Guy E.), J., presiding. Submitted October 5, 1922. (Docket No. 12.) Decided December 29, 1922.

Bill by Jesse Paul Mosshamer and others against the Wabash Railway Company, the Grand International Brotherhood of Locomotive Engineers and others for

an injunction.  From a decree for plaintiffs, defendants appeal.  Reversed, and bill dismissed.

*Denton Guinness* and *Robert M. Brownson,* for plaintiffs.

*Oscar J. Horn,* for defendant brotherhoods.

*Beaumont, Smith & Harris* (*Albert E. Meder,* of counsel), for defendant railway.

FELLOWS, C. J.  The original bill in this case was filed by Jesse Paul Mosshamer against defendant Wabash Railway Company.  Mosshamer was a locomotive engineer in the yard of the railway at its Detroit terminal.  Such engineers are known as yard "fixtures."  He sought by his bill to restrain the company from putting into force certain schedules and orders which he claimed affected his seniority rights and which orders were made by the company in acquiescence with a ruling of the grand chief engineer of the Brotherhood of Locomotive Engineers and the president of the Brotherhood of Locomotive Firemen and Enginemen.  Mosshamer himself had no definite contract of employment with the company and was not a member of either brotherhood.  The company conducts an "open shop."  Later the bill was amended by adding the other plaintiffs and defendants.  The defendant Grand International Brotherhood of Locomotive Engineers is made up of locomotive engineers and will be hereafter called the Engineers' Brotherhood.  The defendant Brotherhood of Locomotive Firemen and Enginemen is made up of both engineers and firemen but the firemen predominate.  It will hereafter be called the Firemen's Brotherhood.  Both brotherhoods are voluntary associations and have local divisions at Detroit which divisions are also made defendants.  The four added plaintiffs belong to the Engineers' Brotherhood and one of them belongs to

both. While the Wabash Railway Company conducts an open shop, it has an agreement with both brotherhoods, that portion dealing with the engineers being of importance here.

The bill was dismissed as to plaintiff Mosshamer and as he has not appealed we need not consider his claims further. Injunctive relief was granted in favor of the four added plaintiffs against all the defendants and all defendants appeal. It is the claim of the present plaintiffs as to the defendant Wabash Railway Company that they are in its employ; that the agreement between the officers of the Engineers' Brotherhood and the officers of the company was made by the Engineers' Brotherhood as agents for these plaintiffs and others; that it granted these plaintiffs certain seniority rights which the railway company is bound to respect and that they are entitled to restrain by injunction the breach of such contract and the withdrawal from them of their seniority rights therein recognized. As to the defendant brotherhoods, plaintiffs insist that a ruling made by grand chief engineer of the Engineers' Brotherhood and the president of the Firemen's Brotherhood, the highest officers in these brotherhoods, construing the agreement between the railway company and the brotherhoods and which construction was accepted by the railway company was without jurisdiction; that it was not made in accordance with the laws of the order; that it was wrong and seriously affected their seniority rights.

Many interesting questions are discussed which in the view we take of the case need not be decided at this time. If we accede to the full plaintiffs' contention that the agreement between the company and the brotherhoods was made by the brotherhoods as their agents and for their benefit, and that they, therefore, have a binding agreement with the company, a contention we do not deem it necessary at this time to

either accept or reject, still these plaintiffs would not be entitled to an injunction from a court of equity restraining the company from breaching its contract. This question has been definitely settled by two recent opinions of this court handed down since the decree in the instant case was made: *Schwartz* v. *Wayne Circuit Judge*, 217 Mich. 384; *Schwartz* v. *Cigar Makers International Union*, 219 Mich. 589. Both of these opinions dealt with the same litigation. They involved a much stronger case than the one now before us. There was in that case a contract for the employment of a definite number of union men for a definite period. But it is not the function of the courts to say to the employer by mandatory injunction, you must employ A and discharge B. If A has a contract with the employer which is breached the court of law is always open to him to recover the damages occasioned him by its breach, but a court of equity may not by mandatory injunction thus interfere with the running of the employer's business. In the instant case the company is running an open shop and there is no contract for the employment of any definite number of union men.

The agreement so far as it appears in the record prescribes working conditions and certain rights of employees. Plaintiffs claim no contract with the railway company, either personally or through the brotherhoods, which binds the company to employ the plaintiffs for a single day. Under the authorities cited and upon the facts of the instant case it must be held that a court of equity is powerless to grant the relief against the Wabash Railway Company here sought. The bill against the Wabash Railway Company should have been dismissed.

Counsel for the brotherhoods filed with his answer a motion to dismiss the bill of complaint and has fully discussed the interesting questions of law involved in the motion; but as we view the facts developed by the

record it will not be necessary to decide them as the plaintiffs under their proofs are not entitled to any relief against the brotherhoods, or either of them.

The Engineers' Brotherhood and the Firemen's Brotherhood had many things in common; in many instances their interests were identical; but in others their interests were in conflict and the rights of their members came into collision. In order to secure a harmonious working of the two brotherhoods an agreement was entered into between them in 1913 known as the "Chicago joint agreement." This agreement was revised May 4, 1918. As revised it contained the following article:

"In case of a dispute between the two organizations which the joint committee or officers placed in charge thereof fail to adjust, the matter shall be referred to the two chief executives, with a statement of the facts upon which each side base their contentions. The two chief executives shall consider and decide the matter in controversy, and their decision shall be final. In case the chief executives fail to agree the matter shall be submitted to arbitration and the decision of the arbitrators shall be final. When a decision has been reached, as above provided, both organizations shall unite in enforcing such decisions."

Seniority rights do not affect the wage but they do affect very materially the character of the employment in that the senior engineer has his choice of jobs; the next man in point of service has the second choice and so on. Seniority rights are, therefore, highly prized and zealously guarded. Some of the engineers perform their service on the line and are called "road" engineers; others perform their service in the yard and are called "yard fixtures" or yard engineers. In some instances engineers waive their so-called firemen's right, in others they insist by reason of their seniority on their right to take a job as fireman and thus displace a fireman in case there are not enough

engineer jobs to go around. This created some friction between the Engineers' Brotherhood and the Firemen's Brotherhood. Each of the brotherhoods had a general committee of adjustment. Within its respective brotherhood this general committee of adjustment, or its chairman when the committee was not in session, heard and settled questions of seniority and seniority rights. Naturally in disputes growing out of seniority rights of the members of the two brotherhoods, the chairman of the general committee of the Engineers' Brotherhood was zealous for its members and the chairman of the general committee of the Firemen's Brotherhood was equally zealous for the membership of the brotherhood he represented. The right of an engineer by reason of his seniority to take a fireman's job in time of depression where there were not enough engineers' jobs to go around and thus displace a fireman was a bone of contention between the two committees for a number of years. Incidental to and interwoven with this question, as we shall presently see, was the right of a "road" engineer to come into the yard and displace a yard engineer or "fixture." Both of these matters were the subject of controversy upon which the two committees could not agree, the right of an engineer to displace a fireman being the most serious. Acting under the provision of the Chicago joint agreement above quoted the two committees agreed to submit the controversy to the chief executives of the two brotherhoods. That the seniority rights of a road engineer when in conflict with the seniority rights of a yard engineer was also before the two chief executives is evidenced by the following excerpt from the letter submitting the controversy to them:

"I would also call your attention to joint letter from Brother Mead and myself, dated May 17, 1916, to Brothers Stone and Carter, and subsequent correspondence in connection therewith concerning yard

engineer fixtures, and whether or not road engine men could disturb them in case of reduction of force."

The executive officers of the brotherhoods in determining the controversy had before them the surrounding circumstances, the provisions of the agreement with the Wabash which it became their duty as final arbitrators of the two brotherhoods to construe and interpret, and we may assume that as heads of these two great fraternal organizations they had the interest of the entire membership of both orders at heart. The agreement or schedule with the Wabash which became effective December 1, 1919, superseded and nullified all previous schedules and rules. In it there were references to seniority rights of both engineers and firemen. One of its clauses set up in plaintiffs' amended bill is as follows:

"On all seniority districts, except Chicago, East St. Louis and St. Louis terminals there will be but one seniority list for engine men. On the third district engineers on yard seniority list, October 1, 1915, and on yard seniority lists on all other districts except Chicago, East St. Louis and St. Louis terminals on May 1, 1917, will be considered yard fixtures, and will have the priority rights in yard service over other engineers who hold rights in road service. Firemen on yard seniority list on third district October 1, 1915, and on yard seniority lists of all other districts, except Chicago, East St. Louis and St. Louis terminals, May 1, 1917, will be consolidated with road lists taking yard seniority with them."

The matter was under consideration by the two executive officers for a considerable length of time before they made their ruling or award which bears date April 5, 1920, and in which the provision above quoted, the claims of the men and the evidence is reviewed and the following conclusion reached:

"It is our opinion, and so we rule, that all 'fixtures' yard engineers have prior right to service as such in conformity with the above quoted for the consoli-

dation of road and yard seniority rights of engineers. This does not mean, however, that 'fixture' yard engineers will be accorded seniority right for preference of assignment to positions over engineers their senior, but who are not 'fixtures,' but does mean that such 'fixtures' cannot be entirely displaced from service as yard engineers during period of business depression by engineers their senior who are not 'fixtures.'

"We would further rule that during periods of business depression, 'fixture' yard engineers who are entirely displaced from service cannot claim right to service as firemen, but will have prior right as extra yard engineers. For example: In a yard five engineers are in service, four of whom are 'fixtures.' It may be that the engineer who is not a 'fixture' is the senior of the five on the engineers' roster. Account of business depression, two engineers are needed. In this case the engineer who is not a 'fixture' would be taken off first, the junior 'fixture' would be next taken off and would have prior right to extra running in the yard over all engineers who are not 'fixtures.'"

This ruling, as we have stated, was acquiesced in by the Wabash and steps were being taken to put it into force when the original bill was filed and the temporary injunction was issued. Of this ruling of the executive officers of the brotherhoods, counsel for plaintiffs say:

"A reference to the constitution, statutes, standing rules, Chicago joint agreement and schedule will show that the alleged ruling of the two executives of the Brotherhood of Locomotive Engineers and [Brotherhood of Locomotive] Firemen and Enginemen, upon which the defendant Wabash Railway bases its claimed right to abrogate and set aside the long established seniority and priority rights of the plaintiffs, is irregular and void."

We have called attention to sufficient of the facts and the regulations of the brotherhoods to demonstrate that the usages, laws and agreements of the brotherhoods had been complied with in submitting the controversy to the chief executives for their final de-

cisions. There are no other exhibits in the record which militate against this conclusion. Indeed, running through the entire structure of the brotherhoods is the thought that the brotherhoods themselves provide the tribunals for the final settlement of the rights of the members and section 52 of the constitution and statutes of the Engineers' Brotherhood provides:

"Any member or members of the Brotherhood who admit (submit), or appeal, any case in controversy arising within the organization, and for which the laws of the brotherhood provide a means of settlement, to the judges of the civil courts, the governors of States or others not identified with the B. of L. E. in official capacity, for opinion or decision, without having previously exhausted all his remedies within the brotherhood, shall be deemed guilty of disloyalty, and upon conviction shall be expelled; and any division convicted of a similar offense shall have its charter suspended by the grand chief engineer."

Counsel for the plaintiffs further argue, however, that, assuming the decision of the two executives is binding, it is only binding as to matters properly before them and that what was said by them as to the rights of road engineers and yard engineers was *dicta* as that subject was not in controversy and not properly before them. As we have stated, we think it was before them and that the excerpt from the letter hereinbefore quoted so demonstrated. But beyond that it was so entwined and intermingled with the other question as to make its decision necessary. Manifestly if an engineer could by reason of his seniority displace a fireman and a road engineer could by reason of his seniority displace a yard engineer the yard fireman was affected by the question and it was a very proper thing to submit the whole matter under the Chicago joint agreement to the two chief executives for decision. Upon the facts disclosed upon this record they had jurisdiction to decide the question.

Plaintiffs' counsel invoke *Dick* v. *International Congress*, 138 Mich. 372, as sustaining their claim that the award or ruling of the two chief executives was not reached by the proper application of the law and for that reason cannot stand. While that portion of the opinion in the *Dick Case* holding that the award could be assailed on the law side of the court was recently overruled in *Palmer* v. *Insurance Co.*, 217 Mich. 292 (see, also *Jackson* v. *Insurance Co.*, 217 Mich. 301), the balance of the opinion still stands. But that was a case where the tribunal of the order to which the matter was submitted received and considered evidence inhibited by a statute of the State enacted to carry out the public policy of the State. It is of doubtful applicability here. But, be that as it may, we are satisfied that the language of the agreement was susceptible of the construction placed upon it by the two executive officers and that their interpretation of it was a proper one. Let us examine this ruling briefly as we are convinced from the testimony in the record that at least some of the plaintiffs misconceive the effect of the ruling. What the executives held was that by the terms of the contract the yard engineers or "fixtures" had priority in yard service over the road engineers, *i. e.*, the road engineers could not come into the yard and displace the yard men. But where there were more jobs in the yard than there were yard engineers and road engineers came into the yard to perform yard service the engineers did not lose their seniority. Illustrating the ruling by the facts in the instant case, it may be said that, at the time of the hearing of the case in the court below, there were in the Wabash terminal at Detroit 26 engineers or "fixtures." If there were but 26 jobs, they would be filled by the 26 yard "fixtures," and no road engineer could come into the yard to perform yard service. If there were 27 jobs a

road man would be brought into the yard to perform yard services and he would bring with him his seniority rights. As we have before stated, seniority rights are highly prized, they have been earned by long years of service. But the seniority rights of a road engineer are as sacred to him as are the seniority rights of the yard engineer to him. The executives took the broad view. And while they held that the priority rights of the yard men prohibited road men from displacing them in their service, they also held that when additional men were required to do the work in the yard a road man was not stripped of his seniority rights acquired by long years of service when called to do yard duty. We think this interpretation of the agreement was fairly within its language and that no injustice to the yard engineers resulted by it.

As triers of the law and the facts, hearing the case *de novo,* we have seen fit to dispose of the case between the plaintiffs and the brotherhoods upon the facts as they appear in the record. This leaves undetermined and unnecessary to determine the motion to dismiss the plaintiffs' bill. The legal questions therein urged must be regarded as still open ones for decision as they may arise.

The decree will be reversed and one here entered dismissing the bill. Defendants will recover costs of both courts.

WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred. MCDONALD and MOORE, JJ., did not sit.