McCLURE v. LOUISVILLE & N. R. CO. et al.

Eastern Section.   May 6, 1933.

Petition for Certiorari denied by Supreme Court, October 14, 1933.

D. Sullins Stuart and S. B. Gilbreath, both of Cleveland, for appellant.

Jones & Davis, of Athens, and J. B. Wright and Johnson & Cox, all of Knoxville, for appellees.

PORTRUM, J.   This suit was filed by Mr. M. R. McClure, a railroad telegrapher, against his employer, the Louisville & Nashville Railroad Company, and his union, the Order of Railroad Telegraphers, to compel the restoration of his asserted seniority status, and the retention of a position which the restored seniority of service would entitle him; and for immediate relief he prayed for an injunction restraining the railroad authorities from dropping him from the rolls of its employees, under its agreement with the union, because of his present seniority status.   The injunction was granted, but later dissolved upon the company giving bond to respond in damages for his wrongful discharge.

The position of the defendants is that the complainant is now correctly classified, and that their only interest in the litigation is to maintain correct classification of the employees, as contemplated by the agreement entered into between the company and the union.

In the lower court the case was heard upon its merits, and the bill dismissed.   The complainant has appealed.

Mr. McClure entered the employ of the Louisville & Nashville Railroad Company March 2, 1912, as a telegrapher, in the operating or transportation department on the Atlanta division, under E. F. Vandivere, chief dispatcher, his immediate superior. He was employed as a reserve man to take the place of any operator in the department who was absent from duty. Later he was assigned to a regular job at Canton, Ga., where he served until June, 1917, when he secured a position in the office of J. F. Hartsough, division freight agent in Atlanta. He wrote his superior this letter:

"Mr. E. F. Vandivere, C. D., Etowah, Tenn.

"Dear Sir: Our Division Freight Agent, Mr. J. F. Hartsough, has offered me a position with him as operator at 'R G,' also trace clerk, effective next Monday the 18th inst.

"After going to Atlanta yesterday and looking over the situation, I accepted the position and will thank you to arrange to send a man here to relieve me by the 18th.

"I believe by going to Mr. Hartsough's office I will have a better opportunity of advancement, as I will have the opportunity of studying the tariffs in his office, which I hope will benefit me to a great extent.

"In leaving your service, I wish to say that I certainly do appreciate the kindness shown me by you and your dispatchers while in this service, and I am leaving you wishing you much success in your work.

"Yours truly,

"(Signed) M. R. McClure."

He remained in his new position in the traffic department of the Atlanta division, under Mr. J. F. Hartsough, until September, 1917, when he was drafted into the service of the United States Army. Thereafter he was considered as an employee on leave of absence, for he applied for, and was granted, transportation, and so designated. Shortly after the United States declared war, the superintendent of the Atlanta division of the Louisville & Nashville Railroad Company published a bulletin stating that all employees, who left the service of the company to enter service in the Army or Navy, upon their return would be given their old positions or similar rating. At this time the company had not granted to its employees seniority privileges. Later the railroads were taken over and operated by the government through a Director General of Railroads, and general order No. 51, pertaining to employment, was issued November 1, 1918, containing these provisions:

"(1) In order that as nearly as practicable there shall be a uniform treatment of this matter, the following general principles will govern:

"(a) In the case of an employee having established seniority rights, so far as practicable, and where the employee is physically qualified, he will be restored to such seniority rights.

"(b) In the case of employees who do not have seniority rights under existing practices, a consistent effort will be made to provide employment for them when mustered out of Military service."

Prior to 1919 the telegraph operators on the Atlanta Division were not organized or allied with the Order of Railroad Telegraphers, but during the year they organized and affiliated with the order, and the order, for and on behalf of its members, entered into a contract with the company, designated as "Working Agreement," effective October 15, 1919. By this agreement the company recognized the right of the employees to deal through the union, and established the rule of seniority, with provision for the interpretation and definition of this right. It provides that, where an employee was discharged, or resigned, or was transferred, he should lose his seniority, but in case he was reemployed in his old department, then his seniority should date from his new employment.

The complainant, McClure, was returned from France, and discharged at Camp Wheeler, Ga., in June, 1919. While he was awaiting his discharge he wrote Mr. J. F. Hartsough, head of the traffic

department, a letter, informing him he expected to be discharged and when discharged he would report for duty as clerk operator, the position held by him before his induction into the Army. When discharged he reported to Mr. Hartsough, at the office of the division freight agent, and informed him he (McClure) understood the Director General of Railroads had ordered railroads to either give the employees who had joined the Army their positions or their seniority. The agent informed him he had no instruction to let seniority prevail in his office, and that he had filled the old position with a Mr. Newsome, who came from the employ of the N. C. & St. L. Railway, and to replace him would leave him without any seniority, or, as he stated, ''Newsome would have no recourse.'' McClure states the agent said he would recommend him for his old position as operator at Canton, Ga.

McClure then proceeded to his home, which was at Canton, Ga., and found a vacancy for an operator at Canton. He then wrote the chief dispatcher, Mr. E. F. Vandivere, of the Atlanta division (his former superior), and applied for the position. Mr. Vandivere replied that, on account of his having gone to the division freight office in Atlanta, he had lost his seniority, but that he would give him employment, and he was placed ''on the extra board,'' until a permanent place could be secured (at that time there was a vacancy at Canton which would have been open to McClure if he could have established his seniority as claimed by him). McClure went to work in July, 1919. He states that at the time he returned to work the operators were then affiliated with the Order of Railroad Telegraphers. He was not a member, but in January, 1929, he became a member. In time he secured a regular position, and in March, 1921, he wrote the chief dispatcher at Etowah, Tennessee, in reference to his seniority and received this reply:

"Office of Chief Train Dispatcher,

"Etowah, Tenn., March 10, 1921.

"Mr. M. R. McClure, Operator, Chatsworth, Ga.

"Dear Sir: In reply to your letter of March 9th, 1921, asking that I agree for your seniority to date from the time you first entered the service.

"Your seniority dates from the last time you entered the service of the Atlanta Division, July 25th, 1919.

"Yours truly,                                        C. T. D.''

Now, while Mr. McClure acquiesced in the company's denial to him of the two positions formerly held by him, and one of which he would have been entitled to if his insistence is correct, he was content to contend for his claimed seniority in order to protect him in his present position. For a time he was assisted by the officers of the union, and his claim carried before T. B. Turner, assistant director of personnel

of the company, whose duty is to handle agreements and wage matters with the local labor organizations. Turner states that he, as the representative of the company, and Mr. Bryant, general chairman of the Order of Railroad Telegraphers, representing the union, had authority by agreement to establish the seniority rating of McClure. And that he consented to fix McClure's seniority as claimed, provided Bryant would agree to restore the seniority claim of three other employees whose rights were identical with McClure's rights. Bryant declined, because the local union was very much opposed to this course. The restoration of one of these claimants was submitted at a later date to a vote of the union, when sixty-three voted against the restoration and three voted for the restoration. However, thirty-three of the members were interested, since their standing would have been lowered by placing the claimant above them on the seniority list. Neither of these methods was the proper method for determining the complainant's rights. He was entitled to have his case tried upon its merits; but the first illustrates the representative of the company was acting impartially, and, the second, that the right of seniority is a valuable right engaging the serious attention of those affected.

Neither the company nor the union rely upon these negotiations as fixing rights, further than it was the complainant's duty to appeal by the method provided by the constitution of the order.

It is insisted by the complainant that he was entitled under the general order of the Director General of Railroads to his old position, upon his return from the Army, or a rating equivalent to seniority dating from his first employment in 1912; and that he is to be treated as if he had never left the service of the company; and when so treated he is entitled as a member of the union to the benefits of the working agreement entered into between the company and the union, which upon a proper construction fixes his rights as he claims.

The company depends upon the theory that there were no seniority rights recognized by it prior to complainant's induction into the Army, and the general order did not confer seniority rights upon him upon his return. That the company did enter into an agreement with the union in 1919, recognizing seniority rights of its employees, dating from their employment, but providing in case of discharge, resignation, or transfer, and reemployment in the department, the seniority should date from the last employment, and complainant is given his rights under this provision. For it is claimed he voluntarily transferred from the transportation department in 1917, a department covered by the agreement, to the traffic department, which department was not covered by the agreement, and where the rule of seniority was not recognized. Because of this transfer he lost his right to seniority in the operating department as of 1912, and only

regained seniority rights as of his second employment in the transportation department in 1919. That this construction of the contract is the correct one, and recognized as a correct construction by the union. And due to repeated solicitation on the part of the union, the contract was modified in 1924, in order that the rule of seniority might apply to the traffic department, and operators in the transportation department might bid on and secure positions in the traffic department in the order of their seniority. Before this modification the heads of these departments were independent in reference to their working force, and each employed his employees. And that this modification of 1924 is not retroactive, entitling the complainant to claim his benefits as if it were in force in 1917.

The union's defense is the same as that advanced by the company. Both argue in their separate briefs, filed as appellees, that the court has no jurisdiction of the subject-matter, because the appellant did not pursue the remedy provided for him in the constitution of the order, by appealing to the superior officer of the order and the railroad company. No assignments of error were filed by the appellees, and the court is not bound to notice errors not assigned, unless it is apparent it has no jurisdiction of the subject-matter. One theory of the bill is that complainant's rights grow out of the general order of the Director General of Railroads, and the union is not the exclusive tribunal to first try this issue. And it seems from the union's answer it has placed a construction on the contract, and the complainant ought to be entitled to a court's review of a legal question. Having taken jurisdiction for these purposes, we think the court had jurisdiction to retain the cause for all purposes, because a finding of fact is necessary in each instance.

We think the chancellor should be affirmed, and the bill dismissed for three reasons: First, the absence of proper parties of interest; second, the laches of the complainant in asserting his rights; and, third, upon the merits of the case.

If the complainant is successful, he displaces thirty-three employees who have been accumulating seniority since before his last employment in 1919, and no one of these employees is before the court to protect his, and the interest of his class. They have been permitted to accumulate seniority for twelve years before the filing of the bill, perhaps in ignorance of complainant's claim, and they may have followed a different course to protect themselves against the loss of their jobs had the complainant promptly established his superior seniority. We think it proper to give the man who would be displaced an opportunity to be heard before his seniority is destroyed.

The chancellor was of the opinion that the letter above quoted was a resignation by the complainant, and, under the terms of the contract between the union and the company, a resignation put an end

to the existing seniority rating. Had the contract as originally made permitted a transfer of an operator from the transportation department to the traffic department without loss of seniority (as in the case since the amendment in 1924), we would agree the letter was not a resignation contemplated by the contract, but only notification of a surrender of a position in one department to take employment in another. Without reference to the letter, McClure surrendered a position in the operating department and accepted a better position in the traffic department, at a time when they were independent departments, and the head of each employing his own employees. The contract establishing seniority applied to the operating department and not to the traffic department, and when McClure surrendered his position in the operating department he lost his seniority as defined and provided in the "Working Agreement."

This is the construction given the agreement by the parties executing it, and their construction is given weight by the court. However, we think it the correct construction. The supplemental agreement of 1924, bringing the traffic department within the terms of the agreement, did not have a retroactive effect, thereby destroying seniority of employees earned under the original agreement. To give it this construction would destroy the supplemental agreement, since it is conceded a seniority right partakes of a property right.

McClure's rights to seniority arose under the contract, and not by reason of the general order of the Director General of Railroads, since at the time seniority in service was not recognized by the company. The company complied with subsection (b) of general order No. 51, by providing employment for the complainant.

We find no error in the decree of the lower court, and it is affirmed.

Snodgrass and Thompson, JJ., concur.