# BEATTY v. CHICAGO, B. & Q. R. CO.

(No. 1915; December 10, 1935; 52 Pac. (2d) 404)

For the appellant, the cause was submitted upon the brief of *John J. Hancock*, of Casper, without oral argument.

24

For the respondent, there was a brief by *R. H. Nichols* and *S. J. Lewis,* of Casper, and *Wilfred O'Leary* and *W. O. Wilson,* of Cheyenne, and oral arguments by *Messrs. Nichols* and *Wilson.*

26

BLUME, Justice.

This is an action for a declaratory judgment. The petition, which is lengthy, alleges, in substance, the

following facts: The defendant is a railroad corporation organized and existing under the laws of the State of Illinois. The Order of Railroad Telegraphers, a trade union, is a voluntary association, comprised of the railroad employees, including agent telegraphers. The object of the union is to negotiate, by collective bargaining, for and on behalf of its members, and it, on October 1, 1927, for and on behalf of plaintiff and others, entered into a contract with the railroad company covering conditions, rates of pay, prevention of favoritism in assignment of work, promotion, transfer, demotion or discharge without sufficient cause, and to provide for mutual insurance. Rules were made and agreed on. These, among other things, provided that when a vacancy should occur, the regular force should have the right to fill it according to seniority "where qualifications are sufficient," and that if the senior applicant should not be assigned to the position, the reason therefor should be given in writing by the superintendent within ten days. Plaintiff is a member of such union, and has been since the time that he became the employee of defendant company on December 4, 1909. On November 17, 1928, he, still employed by defendant, was stationed at Glendo, Wyoming, as third trick operator, at the compensation of 64 cents per hour, and up to that time he had at all times performed his work in an efficient manner and to the satisfaction of defendant. On the last mentioned date, he received from the defendant, through G. Eckhardt, chief despatcher, a copy of an order, according to rule 22, that bids would be received for the position of second trick operator at Glenrock, Wyoming. He sent in his bid on November 22, 1928, and on November 27, 1928, it was accepted and he was assigned to the position above mentioned. On November 28th, however, the assignment was cancelled and the position was given to J. R. Halley, whose seniority rights were inferior to plain-

tiff's. On the next day he sent a letter to Eckhart, protesting against Halley's assignment to the place and claiming his own rights of seniority. For six weeks he continued to protest, but he was given no hearing, contrary to rule 30, that an employee who considered himself unjustly treated should have an impartial hearing within ten days after making protest, and that a decision should be rendered within 7 days. Finally defendant's superintendent became angry, and on January 21st, 1929, he informed plaintiff that he, plaintiff, was removed on account of poor eyesight, which, during an examination on November 22, 1928, had been found to be poor, but which was due to the fact that plaintiff wore his wife's glasses by mistake, and he informed the superintendent of such mistake. On January 25, 1929, accordingly, he was called to Casper for examination by Dr. Moss. The doctor told plaintiff that there was nothing wrong with him. But when plaintiff returned to Glendo the next day, he was informed that he was discharged from service. He protested to the chief despatcher; his protest was ignored, but on February 18, 1929, he was advised that he was dismissed from service because of poor eyesight. He protested against the dismissal. The superintendent thereupon shifted his ground therefor, claiming that plaintiff's blood pressure was too high, as found by an examination during the previous November, and Dr. Moss, one of defendant's examining physicians, reported that such blood pressure was 280, which was false and known to Dr. Moss to be false, and was made in pursuance of a plan by the superintendent to have plaintiff discharged from service. The blood pressure, while somewhat higher than normal, was never above 200 (or 180) as shown by subsequent examinations by Doctors Morad and Nolan, at the instance and direction of the vice-president of defendant, and this condition was not chronic nor dangerous, but was due to

conditions subject to treatment, and he should have been given an opportunity therefor, and he was entitled to a leave of absence for that purpose. Since July 23rd, 1929, the blood pressure has never been above 160. He has at all times been able to perform the duties as second or third trick operator, but defendant has at all times since January 26, 1929, refused and it does now refuse to employ the defendant, and he has not, since that time, been able to obtain any other employment. Plaintiff accordingly asks for a judgment declaring as follows: (1) That on November 27, 1928, and ever since that time, he was a capable and competent agent-telegrapher, qualified and fit to fill the position of second-trick operator at Glenrock or Glendo. (2) That on that date his seniority rights for that position were prior to that of any other person; (3) that his assignment to that position was cancelled without cause; that his protest was unlawfully ignored; (4) that he was unlawfully removed from his position at Glendo; (5) that but for the violation of the contract with defendant he would have been employed ever since at not less than $153.20 per month; (6) that he is entitled to employment by the defendant as a telegrapher or agent-telegrapher, according to his seniority rights at not less than 64 cents per hour; (7) that he have "such other, further, or different declaration of rights as will terminate the controversy hereinbefore set forth, now existing between the plaintiff and said defendant company touching his rights under said contract."

A demurrer to the petition was overruled. Thereupon defendant answered, admitting the allegation as to defendant's corporate capacity and plaintiff's employment as alleged, denied most of plaintiff's allegations, and asserting that plaintiff was dismissed from service on account of incapacity and that he was offered a substitute position at Hardin, Montana. Plain-

tiff replied that the position offered him was that of a common laborer. On September 5, 1934, the court entered judgment against plaintiff on motion of defendant for judgment on the pleadings. The plaintiff has appealed. Counsel for the defendant have presented the case under a double aspect, contending (1) that the judgment should be affirmed because the action was not properly brought under the declaratory judgment act, and (2) that it should be affirmed because the petition did not state facts to constitute a cause of action in any event. A favorable decision on the second contention would obviate the necessity of a decision of the first; but since the latter is the point most urged, we shall confine this decision thereto, leaving the second contention unadjudicated.

1. Preliminary to, and to throw light upon, the points hereafter discussed, we should mention the fact that the court has been asked to declare that plaintiff is "entitled to employment by the defendant company as a telegrapher or agent telegrapher at an hourly rate of not less than sixty-four cents per hour." This, in view of the binding effect which a declaratory judgment has under the statute, is the equivalent of asking the court to award specific performance of a contract of personal service. The general rule is that, except where the employee's services are unique and extraordinary, specific performance, or the correlative right of injunction, will not be granted to enforce such contract, and the only remedy is for damages. 58 C. J. 1056; 14 R. C. L. 385, 386, 390. It is believed that an award of that character against an employee would trench too closely in involuntary servitude, and to award it against an employer would be an attempt by the courts to run the business of the country, which would be dangerous, and that "if the relation of employer and employee is to be of value or profit to either, it must be marked by some degree of mutual confidence

and satisfaction." See cases cited 58 C. J. 1056. Is that rule applicable in the case at bar? Defendant, in its brief, states that the plaintiff has not alleged any contract with the defendant, seemingly contending that the contract made between the defendant and the Order of Railroad Telegraphers, a trade-union, is not a contract under which the plaintiff can sue. The rule in that regard, speaking generally, cannot be said to be altogether settled. See cases collected in note 95 A. L. R. 34-43. Some of the cases, e. g., Burnetta v. Coal Co., 180 Mo. 241, 79 S. W. 136, are inclined toward defendant's view. But there has lately been a distinct tendency in the other direction, and the majority of the decisions bearing on the point hold, upon one theory or another, that a contract entered into between an employer and a trade-union is primarily one, as far as it goes, for the benefit of each individual member of the union, accepted, unless, perhaps, he dissents, when such member enters into the employment. Cases 95 A. L. R. 37-43. See particularly Rentschler v. R. R. Co., 126 Nebr. 493, 253 N. W. 694, 95 A. L. R. 1; Yazoo & M. Valley R. Co. v. Sideboard, 161 Miss. 4; 133 So. 669; Yazoo & M. Valley Co. v. Webb, 64 F. (2d) 902; Harper v. Local Union, (Tex. Civ. App.) 48 S. W. (2d) 1033; Gulickson v. Const. Co., 152 Misc. 624, 273 N. Y. S. 908; Volquardsen v. Amusement Co., (La. App.) 156 So. 678; McCoy v. Ry. Co., (Mo. App.) 77 S. W. (2d) 175; 44 Harvard Law Review 593-604; 41 Yale L. J. 1221-1226; 18 Va. L. R. 182-187. In the case at bar, the petition alleges that the contract in question was entered into by the trade union for and on behalf of the plaintiff and others. For the purposes of this case we are required to consider that allegation as true. We think, accordingly, that the contract involved herein comes within the rule of the last mentioned cases, and must be considered as protecting the plaintiff. It was said in Yazoo & M. Valley R. Co. v.

Webb, supra, that unless a definite period of service is fixed by the contract, no one is bound thereby to serve, and the employer is not bound to hire any particular person; that the employer has the right to discharge at any time and the employee has the right to quit; but that, nevertheless, while the employment lasts, it is subject to the conditions fixed in the agreement, and that a "worker cannot be discharged for causes prohibited by the agreement or without a hearing, if that is provided, and the agreed seniorities must be observed in promoting, laying off, or re-employing men." Hence, if the agreement is violated, the workman may recover his damages sustained by reason of the violation thereof. Yazoo & M. Valley R. Co. v. Webb, supra; Rentschler v. R. Co., supra; McCoy v. Ry. Co., supra; Gary v. Ry. Co., 37 Ga. App. 744, 141 S. E. 819; Cross Mountain Coal Co. v. Ault, 157 Tenn. 461, 9 S. W. (2d) 692. Whether or not, however, an action for specific performance lies, or one for the correlative right of injunction, is another question. The point has arisen in connection with suits by or against a trade union. Actions by employers to enjoin a strike or other illegal action on the part of a trade-union in violation of a contract have frequently been sustained. Goldman v. Cohen, 222 App. Div. 631, 227 N. Y. S. 311 and cases cited; cases note 95 A. L. R. 45-48. The decisions in actions by a trade-union against an employer are not uniform. In Schwartz v. Circuit Judge, 217 Mich. 384, 186 N. W. 522, and Schwartz v. International Union, 219 Mich. 589, 189 N. W. 55, the court held that an employer could not be compelled, at the suit of a trade-union, to discharge employees and hire only union-men, on the theory that a contract for personal service cannot be specifically enforced, citing 14 R. C. L. 390. In other cases, however, actions by a trade-union have been upheld, holding that one for damages is inadequate; that such contract may be en-

forced against a trade-union the same as against an employer, and that it, accordingly, does not lack in mutuality either of obligation or of remedy. Schlesinger v. Quinto, 201 App. Div. 487, 194 N. Y. S. 401 (to prevent a lockout) ; Goldman v. Cohen, supra (to prevent a lockout and compel employer to employ men sent by union) ; Ribner v. Butter & Egg Co., 135 Misc. 616, 238 N. Y. S. 132 (to compel employer to discharge non-union men and hire only union men) ; Harper v. Local Union, (Tex. Civ. App.) 48 S. W. 1033 (to compel employer to hire only union men) ; Weber v. Nasser, 105 Cal. App. 90, 286 Pac. 1075 (to compel maintenance of minimum size of orchestra) ; cases note 95 A. L. R. 48-52. These cases seemingly encroach upon the rule that an employer may hire and discharge whom he will. But that is denied in Schlesinger v. Quinto, supra. In Harper v. Local Union, supra, the court stated that it had concluded that such contract "in its collective aspect is not one for personal service." However that may be, these cases are distinguishable from the case at bar. We have here an action by an individual, seeking to be reinstated in his position, and we are, accordingly, directly confronted with the rule that contracts for personal service will not be specifically enforced. In Mosshamer v. R. Co., 221 Mich. 407, 191 N. W. 210, and in Chambers v. Davis, 128 Miss. 613, 91 So. 346 (two of the judges dissenting), it was held that a contract for seniority would not, as a contract for personal services, be enforced, but that the party claiming such seniority would be left to his action for damages. In Wilson v. Airline Coal Co., 215 Iowa 855, 246 N. W. 753, where the suit was by individuals on behalf of themselves and others, but where the trade-union could neither sue nor be sued, it was held that a contract with the trade-union to maintain a certain standard of wages and other conditions would not be specifically enforced, since the members

did not obligate themselves to anything. But in the case of Gregg v. Starks, 188 Ky. 834, 224 S. W. 459, a contract for seniority rights was specifically enforced by injunction upon the theory that an action for damages would be inadequate. Other cases, with the end in view of specifically enforcing, directly or indirectly, an agreement relating to seniority, but without deciding the point under discussion, are McGregor v. Ry. Co., (Ky.) 51 S. W. (2d) 953; Aulich v. Craigmyle, (Ky.) 59 S. W. (2d) 560; McClure v. R. Co., (Ky.) 64 S. W. (2d) 538; Piercy v. Ry. Co., 198 Ky. 477, 248 S. W. 1042; 33 A. L. R. 322; Baucher v. Godfrey, 119 Conn. 622, 178 Atl. 655; Burton v. R. & Nav. Co., 148 Or. 648, 38 P. (2d) 72—the last three cases being actions for a declaratory judgment. It is apparent that in Gregg v. Starks, supra, the court, confronted with the rule that a contract for personal services cannot be specifically enforced, and with the rule that equity will interfere where an action for damages is inadequate, believed it best that, in case of conflict, the latter rule should prevail. Even if, however, that conclusion is sound, the case cannot be said to be applicable here, for two reasons. In the first place it cannot be said in the case at bar that an action for damages is inadequate. In the second place, the question in the Kentucky case whether the employee should be employed, but whether he should be employed in a particular position. He had not been discharged. By the application of the rule of seniority, he automatically obtained his rights. But the plaintiff in the case at bar would not be automatically reinstated by applying his claimed right of seniority, for his discharge, not directly arising out of that right, stands in the way. In such case the lesser right is necessarily submerged by the greater. Mere recognition of seniority will avail nothing if plaintiff stands discharged. To specifically enforce it would necessarily include and mean in this case specific en-

forcement of an agreement to keep the plaintiff in a position of personal service. A discharge may be unlawful, and give rise to an action in damages. But that is a different thing from saying that the right to discharge does not exist. The contract in the case at bar does not attempt to take it away. Even if it could be said that it does, still another question would arise. A contract must be mutually obligatory. 13 C. J. 331. And mutuality of remedy is a requisite to the right of specific performance. 58 C. J. 866. The contract in the case at bar did not prevent the plaintiff from quitting at any time he chose. In fact it could not take that right away from him. As said in Preble v. Union, 261 Ill. App. 435, involving a contract similar to that here: "Obviously no one can, under the law, be enjoined from ceasing work whenever he desires to do so with or without cause. This has always been the law, as has often been stated by our Supreme Court, and there is no decision to the contrary." That right was recognized by the Wyoming Legislature, when by Sec. 3, Chapter 37, Session Laws of 1933, it prescribed that no court should have jurisdiction to issue an injunction prohibiting any person from "ceasing or refusing to perform any work or to remain in any relation of employment." Since the rights of the parties must be mutual, it seems clear that the only remedy, if any, which the plaintiff has in this case is to sue for damages.

2. In view of this conclusion, is an action for a declaratory judgment proper, or may the court, in its discretion, refuse to entertain it? There are, so far as we know, no direct authorities on that question in the United States. Some of the courts, as shown, have entertained such action for the purpose of passing on rights of seniority, without passing on the point whether such action is proper. None, so far as we know, have involved an action presenting facts similar

to those in the case at bar. An English case, however, that of Rely-A-Bell etc. Co. v. Eisler, Cha. 1926, 609, may be said to be in point. The court in that case followed the general rule in refusing specific enforcement of a contract for personal service, but entered a declaration of breach, and directed damages to be assessed. Should we follow that case, and hold that the trial court in the case at bar abused its discretion?

There is no reason to bring an action for a declaratory judgment unless some good purpose will be subserved thereby. Holly Sugar Co. v. Fritzler, 42 Wyo. 446, 296 Pac. 206. In the ordinary action for damages, a defendant is entitled to know the amount claimed. Sec. 89-1004, subd. 3, Rev. St. 1931, provides that "if the recovery of money is demanded, the amount shall be stated." That provision was doubtless made so that a defendant may prepare his case with a care proportionate to the risk involved, and was made for his benefit. No such prayer is contained in the petition of the plaintiff herein, and the defendant, accordingly, if this action were entertained, would be deprived of the benefit mentioned. Plaintiff, it is true, prayed for such other declaration as would terminate the controversy between the parties. But if that were construed as including a prayer for damages, which probably it should not be, the defendant would, if this action were entertained, still be deprived of the benefit given him by statute. That would seem to furnish a sufficient basis for the exercise of the court's discretion, unless, perchance, countervailing reasons exist to the contrary, and none have been pointed out. If, on the other hand, the prayer is construed as not one for the assessment of damages, which it probably should be, then we are confronted by another situation. The lack of such prayer does not of itself deprive a plaintiff of his proper damages. Declarations have the force and effect of final judgments. Sec. 89-2401, Rev. St. 1931. "Further re-

lief based on a declaratory judgment or decree may be granted whenever necessary or proper." Sec. 89-2408. That doubtless includes the assessment for damages. Consequently we would, in such case, have two proceedings, where one, in the ordinary action, would suffice. The court may use its discretion in entertaining a declaratory judgment action, unless the controversy between the parties is thereby terminated. Sec. 89-2405. See Ziegler v. Pickett, 46 Wyo. 283, 25 P. (2d) 391. There is a general rule against splitting a cause of action. 1 C. J. 1106. And to ask for a declaration for the breach of a contract, and in a subsequent proceeding ask for damages, would seem to violate the spirit of that rule as well as the spirit of Section 89-2405, supra, in a case in which the only ultimate relief to which plaintiff can be entitled is that of damages, unless, perhaps, sufficient reasons exist to more than balance the disadvantage of two proceedings. And counsel for plaintiff has advanced arguments which are thought to do so. There is no reason to think, he states, that the defendant would not voluntarily comply with the declaration of the court, whatever that might be, and hence the controversy would readily be terminated. That, of course, is speculative. It is doubtless true that an employer, if it should be found that he in fact has violated his contract, would often prefer to reinstate an employee rather than take the risk of the award of a large amount of damages. But in the instant case, the employer has, by resisting the action herein, indicated that it has renounced the benefit, if any, from such a course, making it reasonably certain that a second proceeding would be necessary, if the court should declare that it has breached the contract. Nor would an assessment of damages be a mere matter of computation, but the matter would probably be hotly disputed, for the defendant has alleged that it offered the plaintiff a substitute position, so that the

proceeding would probably be substantially equivalent to a second trial. Moreover, even if an employer should desire to pursue the course outlined, for the purpose of obtaining the benefit above mentioned, he would find that it does not lie in his power to obtain it. The employee who has a declaration of breach in his favor is not compelled to compromise. He can, after such declaration, insist upon the assessment of damages, and the advantage, accordingly, which might be gained from such a course would all be in favor of the employee. It is accordingly difficult to see that any good purpose would be subserved in a case like that at bar by an action for a declaratory judgment. All this might, perhaps, be disregarded, if we did not have another reason which would seem to require an affirmance of the judgment. The action herein involves damages in an amount which would permit its removal to the federal courts. There is a diversity of citizenship. And counsel for defendant contend that to entertain a suit for a declaratory judgment would deprive them of the right to remove the case to the federal courts, and that this ought not to be permitted. It is stated in 13 Texas Law Review 96 that "it was conceivable that, if the court (United States Supreme Court) were going to hold that a suit would not be entertained in federal court in any case where it was framed solely as an action for a declaratory judgment, it would be possible for a clever plaintiff to prevent a removal to the federal court on grounds of diversity of citizenship by bringing his action in state court for a 'declaration of rights,' even though the facts stated would support one of the more customary forms of proceeding." In fact, counsel for defendant accuse plaintiff of that conduct and assert that plaintiff originally brought an ordinary action for damages; that the case was removed to the federal courts; that thereupon the action was dismissed and the present action commenced, with

the specific purpose of preventing removal to the federal courts. Whether that is true or not is immaterial, but the possibility of such a course must be considered. There was no federal law at the time of the commencement of this action which permitted declaratory judgments, and there was none until 1934. The action herein was not removable under the decisions in Liberty Warehouse Co. v. Grannis, 273 U. S. 70, 47 S. Ct. 282, 71 L. Ed. 541; Willing v. Chicago Auditorium Ass'n., 277 U. S. 274, 48 S. Ct. 507, 72 L. Ed. 880; Lamoreaux v. Kinney, (C. C. A.) 41 F. (2d) 30, or at least it is highly probable that it was not removable. Commenting on a situation of that kind, it is said in 100 Central Law Journal 96 that "something should be done to preserve the plaintiff's rights under the state law, and yet prevent the easy evasion of federal jurisdiction to which his adversary is entitled." But at the time of the commencement of this action, at least, nothing had been done in the direction indicated, and we must take the situation as we find it. The right of removal to the federal courts presumably is valuable, and has often been asserted to be so. See e. g. Harr v. Pioneer Mechanical Corp., 1 Fed. Supp. 294. It is at least doubtful that the declaratory judgment act was intended to deprive any one of a valuable right. On the contrary, it was intended to supplement, or make perfect, rights or remedies heretofore existing. And we think that the act itself points out the rule that should govern in a case like that at bar. Sec. 89-2415, Rev. St. 1931, provides that "this article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees." There is only one conceivable way by which such harmony with the federal laws seems possible, and that is by the court refusing,

in the exercise of its discretion, to entertain an action under the act whenever the cause, as an ordinary action, is removable under the federal laws, but is not removable if brought under the Declaratory Judgment Act. Everything considered, we cannot say that the court abused its discretion herein.

For the reasons pointed out, the judgment of the trial court is affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.