**REIMAN CORPORATION,**
**Appellant (Plaintiff),**

v.

**CITY OF CHEYENNE, Appellee**
**(Defendant).**

**No. 91–269.**

Supreme Court of Wyoming.

Oct. 13, 1992.

E. James Burke of Burke, Woodard & Bishop, P.C., Cheyenne, for appellant.

Alexander K. Davison and S. Gregory Thomas, City Attorney's Office, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

GOLDEN, Justice.

Reiman Corporation (Reiman) filed a declaratory judgment action against the City of Cheyenne (City) after the City had awarded Reiman a construction contract on an allegedly "mistaken bid." Reiman requested the district court to declare that Reiman was entitled to withdraw/rescind its bid without forfeiture of the bid bond, or, in the alternative, to declare that Reiman was entitled to reform its bid to correct the alleged error. Following a hearing on cross-motions for summary judgment, the district court issued an order which dismissed Reiman's withdrawal/rescission claim for want of jurisdiction and granted summary judgment to the City on the reformation claim. Reiman appeals from only that portion of the district court's order which dismissed its withdrawal/rescission claim. We will reverse and remand.

## ISSUES

The only issue properly before this court is: Whether the district court erred in dismissing Reiman's withdrawal/rescission claim on the basis that it lacked subject matter jurisdiction under the Uniform Declaratory Judgments Act.

## FACTS

The City published an invitation for bids for the construction of a new fire station headquarters building on October 16 and 23, 1990. The invitation for bids informed all prospective bidders that bids would be accepted until bid opening at 2:00 p.m. on November 6, 1990. Reiman submitted its bid to the City at approximately 1:50 p.m. on November 6, 1990. Reiman's bid of

* Chief Justice at time of oral argument.

$1,910,000, secured by a five percent bid bond, was low bid for the project.

Approximately an hour after the bid opening, Tom Reiman (Mr. Reiman), Vice President of Reiman, allegedly discovered a clerical error of $71,000 in the computation of Reiman's bid. Mr. Reiman promptly called Marian Black, the City's Director of Purchasing, and Steve Elliott, the Project Architect, to inform them of the alleged error. Mr. Reiman also wrote a letter to the City Council, in which he explained:

> I made an error in adding up my subcontractor bid column. I was adding up my subcontractor bids at approximately 1:35 p.m. when I received a return call from Bob Strasheim of Mechanical Systems concerning his bid and alternate # 3. * * * The last item I added in my "Total Sub Bid" column was line item # 12 precast for $4,000.00. When I went back to adding the column after the interruption I started at line item # 21 skylight which was below item # 20 for $4,000.00. As a result I le[f]t out the following:

| | |
|---|---|
| Line Item # 14 *** | $34,300.00 |
| Line Item # 15 *** | 1,500.00 |
| Line Item # 16 *** | 25,200.00 |
| Line Item # 19 *** | 6,000.00 |
| Line Item # 20 *** | 4,000.00 |
| TOTAL | $71,000.00 |

Concluding this letter, Mr. Reiman requested that Reiman be allowed to withdraw its bid without forfeiture of the bid bond and that the contract be awarded to the next lowest bidder.

Mr. Reiman appeared before the City Finance Committee on November 21, 1990 and before the City Council on November 26, 1990. At these meetings, Mr. Reiman reiterated the circumstances leading to the allegedly "mistaken bid" and renewed Reiman's request to withdraw its bid without forfeiture of the bid bond. Both the City Finance Committee and the City Council voted to accept Reiman's bid as originally submitted. Accordingly, the City delivered to Reiman a Notice of Award and a Standard Form of Agreement Between Owner and Contractor on November 28, 1990.

The Notice of Award required Reiman to, among other things, execute the contract with the City within ten days. Reiman was advised that failure to execute the contract within the ten-day period would result in a forfeiture of the bid bond. The City issued an amendment to the Notice of Award on December 4, 1990, thereby extending Reiman's time for compliance to December 26, 1990.

Reiman filed a petition for declaratory judgment and a motion for preliminary injunction against the City on December 14, 1990. Reiman requested the district court to declare that Reiman was entitled to withdraw/rescind its bid without forfeiture of the bid bond or, in the alternative, to declare that Reiman was entitled to reform its bid to correct the alleged error. Reiman also requested that the district court issue a preliminary injunction to enjoin the City from either requiring Reiman to execute the contract or from taking action to forfeit the bid bond during the pendency of the declaratory judgment action. A hearing on Reiman's motion for preliminary injunction was set for December 20, 1990.

On December 20, 1990, Reiman and the City entered into an agreement which provided, among other things, that Reiman would withdraw its pending motion for a preliminary injunction, that the declaratory judgment action would remain pending, and that Reiman would sign the contract and proceed with construction. The agreement provided that the contract price would be determined as follows:

> d. If the parties cannot agree in writing as to a contract price, the price shall be determined as set forth in this Agreement based upon the decision of the District Court in the action currently pending in Laramie County District Court.
>
> *    *    *    *    *    *
>
> f. If Reiman prevails, and the District Court finds that Reiman is entitled to rescind its bid, Reiman shall be entitled to a contract price of $1,981,000.00.
>
> g. If the City of Cheyenne prevails in such litigation, and the District Court finds that Reiman is not entitled to re-

scind its bid, the City shall be entitled to a contract price as stated in Reiman's original bid, $1,910,000.00.

Following discovery proceedings, the City filed a motion for summary judgment in the underlying declaratory judgment action on October 7, 1991. Reiman responded with a cross-motion for summary judgment on October 17, 1991. A hearing was then held after which the district court issued an order on October 24, 1991. The district court dismissed Reiman's withdrawal/rescission claim for want of jurisdiction and granted summary judgment to the City on Reiman's reformation claim. The district court specifically determined that the withdrawal/rescission issue was rendered moot by the parties' agreement of December 20, 1990 and that reformation was available only in instances of mutual mistake. This appeal ensued.

## DISCUSSION

On appeal, Reiman challenges only that portion of the district court's order which dismissed its withdrawal/rescission claim. Reiman contends that the district court erred in determining that the withdrawal/rescission claim failed to present a justiciable controversy within the meaning of the Uniform Declaratory Judgments Act. Reiman concedes that withdrawal/rescission of its bid is no longer an option, but contends that a justiciable controversy remains in that resolution of the withdrawal/rescission claim will have the collateral effect of establishing the contract price. Thus, the crux of the instant case concerns whether, as a jurisprudential matter, the district court erred in dismissing Reiman's rescission/withdrawal claim on the ground that the parties' December 20, 1990 agreement had rendered the issue moot. Resolution of this issue requires that we examine the policies underlying both the Uniform Declaratory Judgments Act and the doctrine of justiciability to determine if this is a proper case for judicial action.

The Uniform Declaratory Judgments Act dispelled the myth that the judicial arm of government could be extended only to redress prior wrongdoings (corrective jus-

tice). Edwin M. Borchard, *The Declaratory Judgment—A Needed Procedural Reform (Part I)*, 28 Yale L.J. 1, 2 (1918). The Act is founded upon the premise that society is disturbed not only when legal rights are violated, but also when they are placed in serious doubt or uncertainty. *Id.* Consequently, the Act establishes a procedural vehicle whereby litigants may approach the court for a declaration of their "rights, status and other legal relations whether or not further relief is or could be claimed" (preventive or corrective justice). Wyo. Stat. § 1–37–102 (1988). Edson R. Sunderland captured the essence of the effect of the declaratory judgment on the administration of justice by explaining that, before the advent of the declaratory judgment, "courts were employed only as repair shops; since that time they have operated as service stations." Edson R. Sunderland, *A Modern Evolution in Remedial Rights,—The Declaratory Judgment*, 16 Mich.L.Rev. 71, 77 (1917).

■ The stated purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to legal relations * * *." Wyo.Stat. § 1–37–114 (1988). The Act is to be liberally construed to this end. *Id.; Brimmer v. Thomson*, 521 P.2d 574, 577 (Wyo.1974) (begrudging availability of declaratory judgment is inconsistent with its purpose). Expounding upon the purpose underlying the Act, Professor Borchard has succinctly stated:

> As a measure of preventive justice, the declaratory judgment probably has its greatest efficacy. It is designed to enable parties to ascertain and establish their legal relations, so as to conduct themselves accordingly, and thus avoid the necessity of future litigation.

Edwin M. Borchard, *The Declaratory Judgment—A Needed Procedural Reform (Part II)*, 28 Yale L.J. 105, 110 (1918).

■ Although the Uniform Declaratory Judgments Act is to be liberally construed to the end that courts may declare "rights, status and other legal relations whether or not further relief is or could be claimed," the Act does not expand the juris-

diction of the courts. The right to seek a declaratory judgment is open only to those persons " * * * *  *interested* under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise * * *." Wyo.Stat. § 1–37–103 (1988). The "interest" requirement is but an expression of the basic doctrine that the judiciary will not invoke its remedial powers unless presented with a justiciable controversy. *Mountain West Farm Bureau Mut. Ins. Co. v. Hallmark Ins. Co.*, 561 P.2d 706, 709 (Wyo.1977).

▮ A justiciable controversy is defined generically as a controversy fit for judicial resolution. Numerous doctrines have evolved under the justiciability umbrella which are aimed at isolating those circumstances in which courts should withhold decision, either from deference to the particular authority and competence of another branch of government, or from recognition of the functional limitations of the adversary system. The doctrines include the political question doctrine, the administrative questions doctrine, the advisory opinions doctrine, the feigned and collusive cases doctrine, the doctrine of standing, the doctrine of ripeness, and the doctrine of mootness. 13A Charles A. Wright Et Al., *Federal Practice and Procedure* § 3529 (1984).

▮ Of particular importance to the instant case are the doctrines of standing, ripeness, and mootness. These doctrines are premised upon jurisprudential principles which are designed to promote judicial economy and the wise exercise of judicial power. To these ends, the standing doctrine requires that the litigants have a tangible interest at stake in the subject matter before the court; the ripeness doctrine requires that the issue presented to the court be sufficiently mature for judicial resolution; and the mootness doctrine requires that a justiciable issue remain before the court throughout the duration of the suit. *Memorial Hosp. of Laramie Co. v. Dept. of Rev. & Tax.*, 770 P.2d 223 (Wyo.1989) and *Washakie Co. Sch. Dist. No. 1 v. Herschler*, 606 P.2d 310 (Wyo. 1980) (standing); *Indus. Siting Council v. Chic. & N.W. Transp.*, 660 P.2d 776 (Wyo. 1983) (ripeness); *Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.*, 773 P.2d 911 (Wyo.1989) (mootness).

The jurisprudential principles underlying the standing, ripeness, and mootness doctrines are embodied in the definition of a justiciable controversy adopted in *Brimmer*. The *Brimmer* court identified the following four elements as being necessary to establish a justiciable controversy under the Uniform Declaratory Judgments Act:

1. The parties must have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Brimmer*, 521 P.2d at 578.

There is no question but that a justiciable controversy existed between Reiman and the City at the time the petition for a declaratory judgment was filed with the district court. The district court, however, determined that the parties' December 20, 1990 agreement rendered the withdrawal/rescission issue moot. Specifically, the district court reasoned:

What was once a very real and actual controversy over whether or not Reiman could withdraw its bid without bond for-

feiture, is now moot. Assuming the court were to grant Reiman rescission, the contract would no longer stand; the City would have to award the con[s]truction project to the next lowest bidder. This is no longer possible, and thus what the parties ask of this court simply does not make sense.

Hence, the rationale for the district court's determination that it lacked subject matter jurisdiction under the Uniform Declaratory Judgments Act was because a ruling on the withdrawal/rescission issue could no longer "effectively operate," i.e., that withdrawal/rescission of bid could not presently be ordered.

■ The district court erred in determining that it lacked subject matter jurisdiction under the Uniform Declaratory Judgments Act because the parties' December 20, 1990 agreement had rendered the withdrawal/rescission issue moot. The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. Wright, *supra*, § 3533.1. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973). Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Wright & Miller § 3533.

■ The district court did not focus upon whether resolution of the withdrawal/rescission issue continued to be justified, following the December 20, 1990 agreement, by the impact it would have upon the parties. Rather, the district court centered attention upon whether a ruling on the withdrawal/rescission could "effectively operate." The district court's hyper-technical application of the requirement that its judgment "effectively operate" is inconsistent with the liberal construction that is to be applied to the Uniform Declaratory Judgments Act. *See Kurpjuweit v. North-western Dev. Co.*, 708 P.2d 39 (Wyo.1985). The requirement that the judgment of the court "effectively operate" means only that a court's decision must have some practical effect upon the litigants, i.e., that a court may not issue a purely advisory opinion. Justice Blume has expressed this concept by stating that action under the Act is justified when "some useful purpose" will be accomplished thereby. *Holly Sugar Corp. v. Fritzler*, 42 Wyo. 446, 463, 296 P. 206, 210 (1931); *accord Beatty v. C.B. & Q.R. Co.*, 49 Wyo. 22, 37, 52 P.2d 404, 408 (1935).

We believe that Reiman's withdrawal/rescission claim yet presents a justiciable controversy and that consideration of the matter will serve the useful purpose of settling the parties' on-going dispute over contract price. The December 20, 1990 agreement merely changed the impact that resolution of the withdrawal/rescission issue would have upon the parties' rights; it did not render the issue legally insignificant. Jurisprudential concerns for judicial economy and concrete adverseness are not implicated. The parties have a "tangible interest at stake" in that $71,000 hinges upon resolution of the withdrawal/rescission issue. *See Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (financial interest in resolution of Presidential immunity issue sufficient to defeat mootness claim arising under similar circumstances). We harbor no misgiving but that the parties will thoroughly research the relevant issues and militantly present them to the court for resolution. Moreover, this is not a hypothetical or abstract case. The facts relevant to the withdrawal/rescission issue developed in their natural course and exist to guide judicial decision. *See Wright, supra*, § 3533.1. Finally, judicial resolution of the withdrawal/rescission issue is not merely an academic exercise. As previously stated, a decision on this issue will have the practical impact of determining the construction price for the headquarters fire station building.

Contract principles also support judicial resolution of the withdrawal/rescission issue. Mootness questions, as with other

questions arising from settlement agreements, should be answered according to the intent of the parties. Wright, *supra*, § 3533.2. In the instant case, the parties' intent to be bound by judicial resolution of the withdrawal/rescission issue is manifest in their agreement of December 20, 1990. Given that we find no jurisprudential impediment to entertaining this suit, we feel that it would be patently unjust not to hold the City to its end of the bargain, thereby leaving Reiman in a quandary as to how to resolve the continued dispute over contract price.

In summary, affirmation of the present case would place this court in the illogical position of invoking the jurisprudential doctrine of mootness, which is founded in large part upon the principle of judicial economy, to thwart the parties' effort under the Uniform Declaratory Judgments Act to expeditiously settle their controversy over contract price in an attempt to avoid future litigation. Under the circumstances of the instant case, this is what does not make sense. Consequently, we hold that the district court erred as a jurisprudential matter in dismissing Reiman's withdrawal/rescission claim for lack of subject matter jurisdiction under the Uniform Declaratory Judgments Act.

## DISPOSITION

The order of the district court which dismissed Reiman's withdrawal/rescission claim for want of jurisdiction is reversed. This case is remanded to the district court for a declaration as to whether a public bid may be withdrawn/rescinded, under the circumstances of this case, without forfeiture of the bid bond.

CARDINE, J., files a specially concurring opinion.

THOMAS, J., files a dissenting opinion.

CARDINE, Justice, specially concurring.

This declaratory judgment suit as originally filed was to determine whether Reiman could withdraw or rescind its bid. When the parties made a new agreement to award the construction contract to Reiman and pay or not pay an additional $71,000 over the bid price depending upon the determination of the right to withdraw or rescind, a different case was presented to the court. It is true that having entered into the construction contract the parties could no longer rescind or withdraw the bid. Therefore, that question was moot. But the $71,000 obligation under the new agreement still exists. Whether that should be resolved in the declaratory judgment action or in a separate action is the question here presented. Judicial economy would be served by resolving the question in the declaratory judgment action; and, therefore, I will concur.

THOMAS, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. In my view, the dismissal by the trial court was correct and, since it was correct, the trial court had a right to have its judgment sustained. Seventy-one Thousand Dollars may indeed be a high price to pay for careless addition in preparation of a contract bid. On the other hand, a reversal of a district court, in an instance in which it entered a correct judgment, is a high price for the court to pay.

Perhaps the process of fossilization is an early affliction for me. I am satisfied, however, that this is an instance in which a modicum of judicial conservatism is appropriate. While I probably would have agreed to sustain a district court that entertained jurisdiction in a case such as this, I cannot fault the district court for denying jurisdiction. Here the liberal construction concept as applied to declaratory judgments has been strained beyond the breaking point. The reach of the statute no longer is confined to the statutory language. Judicial expediency and the appropriate construct of a solid body of law are not always compatible, and they are not in this case.

The majority opinion can be described as a holding that, since the differences between the parties must somehow be settled at some point, it is appropriate to have those differences determined in this case. That result has superficial appeal. That

appeal begins to diminish when it is recognized Reiman came before the court asking to have a declaratory judgment of its right to withdraw, without penalty, a bid submitted on a municipal construction project or, alternatively, the right to reform its bid at a time when the City of Cheyenne had accepted Reiman's bid and had submitted a contract to Reiman for execution. The only documents that were pleaded to the court in Reiman's Petition for Declaratory Judgment do not constitute a contract and, obviously, there was not a written contract for the court to construe.

It may be overkill to quote the pertinent statute, but it states:

> Any person interested under a deed, will, **written contract or other writings constituting a contract,** or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

Wyo.Stat. § 1–37–103 (1988) (emphasis added).

At this juncture, my point is that what was presented to the court by Reiman's pleading does not qualify as a "written contract" nor does it qualify as "other writings constituting a contract." It was a bid and, while the City had accepted the bid by official action, the only relief prayed for by Reiman was a declaration of its right to withdraw or to reform its bid. I do not believe even a liberal construction of § 1–37–103 justifies a declaratory judgment as to "rights, status or other legal relations" under a bid. In effect, the court's decision amends the statute to include the word "bid."

The matter is exacerbated by the fact that, after presenting its complaint, Reiman made an arrangement with the City of Cheyenne to execute the contract, in effect reserving the right to claim an additional $71,000 as a part of the contract price. That agreement has some potential for cognizance under the Uniform Declaratory Judgments Act, Wyo.Stat. §§ 1–37–101 to –115 (1988), but Reiman did not ask to have rights *under the new agreement* declared by the court. The effect of this court's decision is to achieve exactly that, however. The case is remanded so the trial court can articulate a declaration of rights under the collateral agreement pursuant to which the contract let by the city was executed. In the exercise of an extreme degree of caution, however, the parties in their collateral agreement provided:

> e. Although this Agreement will be binding between the parties, **such litigation [the case before this court] shall be determined without reference to this Agreement** [emphasis added], i.e., the parties agree that this Agreement shall not be relevant evidence in determining whether Reiman was entitled to rescind its bid.

Our decision simply ignores the agreement of the parties and sends this case back for the trial court to consider the rights of the parties under the collateral agreement despite their stipulation it not be referred to or considered as evidence. It may be the trial court will be as creative as our court and will find a way to declare rights under an agreement it cannot consider in evidence, but I would be nonplussed if I were the district court.

There is another reason to affirm the trial court that is even more compelling. In directing the trial court, in effect, to consider the pleadings to have been amended to encompass the collateral agreement, the majority says, "[a]s previously stated, a decision on this issue will have the practical impact of determining the construction price for the headquarters fire station building." Op. at 1187. The result in truth and fact is that the majority opinion assumes the bid of Reiman can be reformed, thus increasing it by $71,000. Yet, the majority recognizes the trial court entered a summary judgment in favor of the City of Cheyenne on the issue of reformation. The question the majority assumes will be resolved upon remand has been finally decided. Since that judgment was not appealed, it stands as res judicata on

the right to have the bid reformed. The trial court will have little difficulty in finally disposing of the case on remand.

I also have a concern about the wisdom of this decision in the context of public policy. It is clear from the record Reiman did not seek, in any way, to have any determination made with respect to Wyo. Stat. § 15–1–113(f), which provides in pertinent part:

> (f) In advertising for any bid, the forms of guarantee required under this section and approved by the city or town shall be specified. In addition, bidders shall be required to accompany each bid with a bid bond or if the bid is one hundred thousand dollars ($100,000.00) or less, any other form of bid guarantee approved by the city or town, equal to at least five percent (5%) of the total bid amount, with sufficient surety and payable to the city or town. **The bid guarantee shall be forfeited as liquidated damages if the bidder, upon the letting of the contract to him, fails to enter into the contract within thirty (30) days after it is presented to him for that purpose or fails to proceed with the performance of the contract** [emphasis added].

There certainly is nothing within the language of this statute that could possibly be construed to rescue Reiman from the situation of a mistake in submitting its bid. The language is clear, and the invocation of the concept of liquidated damages by the legislature had to be by design.

The practical effect of this decision, however, will be that, anytime anyone submits a bid on a public construction project and suffers bidders' remorse, a declaratory judgment suit will be filed to have determined the right of the bidder to not perform its bid. The pragmatic consequence in every instance has to be that, if the disparity between the contested bid and the next higher bid is approximately the amount required to litigate the declaratory judgment action, the successful bidder will be permitted to withdraw the bid it now finds to be unsatisfactory. The purpose of the statute will be frustrated in such in-

stances. I find this to be an undesirable burden to foist upon the competitive bidding process for public construction projects.

In my view, the district court was precisely correct when it ruled that, by signing the contract, the parties mooted the issues that purportedly were presented in their declaratory judgment claim. The trial court perhaps went further than it needed to when it contemplated reformation of the contract to change the price, but I cannot perceive how its disposition of that issue on the merits by granting summary judgment to the City of Cheyenne can be refuted. I know of no precedent from this court that would justify reformation upon a unilateral mistake, although by this remand we may be suggesting such a rule.

While I might, at least for myself, develop a response to the majority position that is more sound than that of the trial court, I think this circumstance is one in which the trial court's views deserve to be heard. Consequently, I have attached as Appendix A to this opinion the entire pertinent order of the district court which, as I have said, correctly disposes of the case.

I would affirm the district court.

## APPENDIX A

### IN THE DISTRICT COURT FOR THE FIRST JUDICIAL DISTRICT

### STATE OF WYOMING, COUNTY OF LARAMIE

DOCKET NO. 125–421

REIMAN CORP., Plaintiff,

vs.

CITY OF CHEYENNE, Defendant.

Filed October 24, 1991

ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN PART AND ORDER DISMISSING FOR LACK OF SUBJECT MATTER JURISDICTION IN PART

This case originated with a petition for declaratory judgment filed by Reiman Corp., Plaintiff, against the City of Chey-

enne, Defendant. This petition is the basis for the motion for summary judgment filed by the City and the cross-motion for summary judgment filed by Reiman.

The petition sought a declaratory judgment allowing Reiman to withdraw its bid in the amount of $1,910,000.00, submitted pursuant to the City's invitation for bids for the construction of a new Headquarters Fire Station, or, in the alternative, to allow a reformation of the bid to correct an error made in calculating the bid price, which should have been $71,000.00 more, or a price of $1,981,000.00. Additionally, the petition requested that a bid bond, submitted with the bid, in the amount of five percent (5%) of Reiman's total bid, be returned to Reiman. The City refused to allow Reiman to withdraw its bid unless Reiman forfeited its bond, relying on the competitive bidding statute at W.S. § 15–1–113 (1991 Cum.Supp.):

> (f) ... The bid guarantee shall be forfeited as liquidated damages if the bidder, upon the letting of the contract to him, fails to enter into the contract within thirty (30) days after it is presented to him....

Pending the resolution of the petition for declaratory judgment, Reiman moved to have the City temporarily enjoined from taking any action to cause a forfeiture of its bid bond and also enjoined from requiring Reiman to sign a construction contract. Prior to the hearing seeking temporary relief, Reiman entered into a stipulated agreement with the City. The parties agreed to the following relevant provisions:

> b. The Declaratory Judgment action currently pending in Laramie County District Court will remain pending.
> c. Reiman will execute the contract presented by the City and will perform the work specified in the contract. The price Reiman Corp. will be paid for the work will be either the original bid price of $1,910,000.00 or the amended bid price of $1,981,000.00 or such other price as the parties agree upon in writing.
> d. If the parties cannot agree in writing as to a contract price, the price shall be

determined as set forth in this Agreement based upon the decision of the District Court in the action currently pending in Laramie County District Court.
> e. Although this Agreement will be binding between the parties, such litigation shall be determined without reference to this Agreement, i.e., the parties agree that this Agreement shall not be relevant evidence in determining whether Reiman was entitled to rescind its bid.
> f. If Reiman prevails, and the District Court finds that Reiman is entitled to rescind its bid, Reiman shall be entitled to a contract price of $1,981,000.00.
> g. If the City of Cheyenne prevails in such litigation, and the District Court finds that Reiman is not entitled to rescind its bid, the City shall be entitled to a contract price as stated in Reiman's original bid, $1,910,000.00.

This agreement allowed Reiman to commence work under the contract, while at the same time seeking to reserve for judicial determination the question of whether Reiman would be entitled to receive the additional amount of $71,000.00 due to its mistake in preparing the bid. By their respective motions for summary judgment, both the City and Reiman now seek to have the court resolve the question of additional compensation.

This court is concerned about whether a "justiciable controversy" now exists within the meaning of the Uniform Declaratory Judgments Act, W.S. § 1–37–101 through § 1–37–115. The elements of a justiciable controversy under the Act are as follows:

> * * * First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relation-

ships of one or more of the real parties in interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them. Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution. * * *

*Brimmer v. Thomson,* 521 P.2d 574, 578 (Wyo.1974); *Mountain West Farm Bureau Mutual Insurance Co. v. Hallmark Insurance Co.,* 561 P.2d 706, 710 (Wyo. 1977).

If the court were to determine that the bid could be rescinded, it could not order its rescission because Reiman is performing under that bid. Any order which would issue from this court would not serve to allow Reiman to withdraw its bid. Thus, a judgment regarding rescission would not effectively operate.

The method by which the parties seek to resolve their dispute presents an issue of subject matter jurisdiction. (See, *Mountain West,* at 710. A justiciable controversy is a jurisdictional requirement.) The court is not being asked to rescind the bid. Rather it is being asked to decide whether the bid *could have* been rescinded. The parties have agreed that if the court rules that the bid could have been rescinded,[1] then Reiman by agreement gets the additional $71,000.00. If the court determines that the bid could not have been rescinded, Reiman is paid the original bid quoted.

The actions of the City and Reiman, subsequent to Reiman's petition for declaratory judgment, have rendered the issue of rescission moot. This is not to say that a controversy does not exist as to the con-

tract price. Indeed a very real controversy regarding the price does exist. But as to the specific question of rescission, subsequent conduct by the City and Reiman have rendered the issue moot. Reiman has executed the contract presented to it by the City and Reiman has proceeded to perform under the contract. What was once a very real and actual controversy over whether or not Reiman could withdraw its bid without bond forfeiture, is now moot. Assuming the court were to grant Reiman rescission, the contract would no longer stand; the City would have to award the construction project to the next lowest bidder. This is no longer possible, and thus what the parties ask of this court simply does not make sense.

Undoubtedly, a dispute does still remain between the City and Reiman over the contract price amount. However, this dispute is not properly decided based upon a determination regarding rescission. A decision regarding rescission cannot determine the price except only as the parties have agreed. "The court may refuse to render a declaratory judgment where the judgment would not terminate the uncertainty or controversy giving rise to the proceeding." W.S. § 1–37–108. Moreover, the issue presented seeks an advisory opinion. It is advisory because it seeks a declaration of what *could have* been had the parties proceeded with the temporary relief sought, not what is. (See, *Brimmer,* at 579. "It is axiomatic that the Declaratory Judgments Act cannot be relied upon to secure an advisory opinion. * * * An advisory opinion is one which adjudicates nothing and binds no one [citations omitted].")

Even though this court has determined that it lacks subject matter jurisdiction to resolve the prayer seeking rescission, it may yet exercise subject matter jurisdiction over that portion of the prayer seeking reformation. The issue of reformation is based on the substantive and real contro-

---

1. The parties have stipulated that the agreement on file herein cannot be considered as evidence. This court is not bound by this agreement. Indeed to ignore it would be tantamount to allowing the parties to confer subject matter jurisdiction by stipulation, an impossible prospect.

See, *White v. Board of Land Commissioners,* 595 P.2d 76, 79 (Wyo.1979). "Parties cannot confer jurisdiction by consent. [Citations omitted] and jurisdiction of subject matter cannot be waived. [Citation omitted.]"

versy over the price amount which constitutes a justiciable controversy needing resolution.

The law on reformation, however, applies only to those matters which involve a mutual mistake. This is not a case of mutual mistake. This is case involving a unilateral mistake. A unilateral mistake does not provide grounds for reformation. See, *Svalina v. Big Horn National Life Insurance Co.*, 466 P.2d 1018 (Wyo.1970); *City of Baltimore v. DeLuca–Davis Construction Co.*, 210 Md. 518, 124 A.2d 557 (1956); *Department of Transportation v. Ronlee, Inc.*, 518 So.2d 1326 (Fla.Dist.Ct.App.1987). Moreover, to order reformation would be incompatible with the statutory scheme concerning public contracts.

Accordingly, as to reformation, partial summary judgment is granted in favor of the City. As to rescission, the court determines that it has not been presented a justiciable issue within the meaning of the Uniform Declaratory Judgments Act.

DATED this 24 day of October, 1991.

/s/ Nicholas G. Kalokathis
NICHOLAS G. KALOKATHIS
DISTRICT JUDGE

cc: Alexander Davison
    James Burke