SOUTHWESTERN PUBLIC SERVICE
COMPANY, Appellant
(Defendant),

v.

THUNDER BASIN COAL COMPANY,
Appellee (Plaintiff).

Tuco, Inc., Appellant (Defendant),

v.

Thunder Basin Coal Company,
Appellee (Plaintiff).

Nos. 98–139, 98–140.

Supreme Court of Wyoming.

April 27, 1999.

Kate Fox, Davis & Cannon, Cheyenne, WY, and Stephanie Landry, Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P., Albuquerque, NM, Representing Appellant Southwestern Public Service Company. Argument by Ms. Fox.

John J. Coates, Dill, Dill, Carr, Stonbraker & Hutchings, P.C., Denver, CO; John A. Coppede, Sundahl, Powers, Kapp & Martin, Cheyenne, WY; and Steven L. Hoard, Don D. Sunderland, Brad A. Chapman, Mullin, Hoard & Brown, L.L.P., Amarillo, TX, Representing Appellant TUCO, Inc. Argument by Mr. Coates.

David K. Isom, J. Preston Stieff, David K. Isom Law Offices, Salt Lake City, UT; Thomas F. Linn, Atlantic Richfield Company, Denver, CO; and William D. Omohundro, Omohundro Law Offices, Buffalo, WY, Representing Appellee Thunder Basin Coal Company. Argument by Mr. Isom.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Appellants, TUCO, Inc. and Southwestern Public Service Company (SPS), challenge the district court's rulings in a declaratory judgment action brought by Appellee Thunder Basin Coal Company. Appellants claim the court erred in refusing to dismiss or stay the Wyoming action because it resolved factual issues at the center of a pending case filed in Texas. They also attack the district court's entry of summary judgment in favor of Thunder Basin. Although the district court did have jurisdiction over TUCO in respect to one of two coal supply agreements, we find it abused its discretion in refusing to stay the Wyoming action during the pendency of the Texas lawsuit. Because we reverse and remand on that basis, summary judgment in favor of Thunder Basin is vacated.

## ISSUES

TUCO presents the following issues for review:

1. Do principles of comity and federalism mandate that the trial court dismiss or stay Thunder Basin Coal Company's declaratory relief action because it carves out a central fact issue from a first-filed Texas case and presents it for determination in Wyoming?

2. Did the trial court err by failing to stay or dismiss Thunder Basin Coal Company's complaint for declaratory relief when there was no case or controversy presented for the court to determine because the subject matter of the dispute under the Coal Supply Agreements had been resolved by Thunder Basin Coal Company's performance?

3. When it became apparent that there was no case or controversy to confer jurisdiction over Thunder Basin Coal Company's complaint, did the trial court err by permitting this case to proceed to summary judgment?

4. Should TUCO INC. have been granted summary judgment when it proved that the unambiguous terms of the Coal Supply Agreements when given their plain meaning established that there were no genuine

issues of material fact for determination at trial and that TUCO was entitled to judgment as a matter of law?

5. Alternatively, did the trial court err in granting Thunder Basin Coal Company's motion for summary judgment when the terms of the Coal Supply Agreements were shown to be ambiguous and there were disputed issues of material fact to be determined at trial that precluded the entry of summary judgment?

SPS limits its appeal to two issues:

1. Does Thunder Basin have standing to seek declaratory judgment on a contract that had never been assigned to it?

2. Is there a case or controversy regarding agreements that are contingent upon a happening that has yet to occur?

Appellee Thunder Basin phrases the issues:

1. Did the district court properly grant summary judgment in favor of Thunder Basin on the ground that the unambiguous language of the Coal Supply Agreements supports Thunder Basin's interpretation of the contracts?

2. Did the district court abuse its discretion in declining to dismiss or stay this action where, among other considerations, this action involved critical issues and claims not being litigated in Texas, complete relief was not available in Texas, the subject contracts were governed by Wyoming law, and all interested parties were parties to this action but not the Texas action?

## FACTS

This dispute involves separate contracts for the purchase of coal. In 1976, TUCO agreed to purchase coal from ARCO pursuant to the Revised Harrington Agreement (the First Agreement). The initial term of the First Agreement continued through 1993, and, by extension, terminated at the end of 1997. At the same time, SPS signed a Guaranty Agreement with ARCO assuring that SPS would assume TUCO's obligations under the First Agreement if TUCO defaulted.

In 1977, ARCO assigned its interest in the First Agreement and the Guaranty to its subsidiary, Thunder Basin. The same year, ARCO and TUCO signed the Tolk Agreement (the Second Agreement) for additional supplies of coal through the year 2017. ARCO assigned the Second Agreement to Thunder Basin in 1982.

In lieu of a direct guaranty to the Second Agreement, SPS and ARCO signed a "Conditional Agreement for Coal" (Conditional Agreement). Under the Conditional Agreement, if the Second Agreement is canceled, ARCO and SPS will execute a new coal agreement (the SPS Agreement), which contains terms virtually identical to the Second Agreement. The SPS Agreement is attached as an exhibit to the Conditional Agreement and can be assigned if, and only if, the Second Agreement is canceled. The Conditional Agreement is not assignable.

On February 16, 1994, TUCO and SPS initiated an action in Texas district court against Thunder Basin and ARCO asserting limited claims relating to the First Agreement. (*TUCO INC. v. Thunder Basin Coal Company*, No. 79, 483–C). In September 1994, TUCO amended its petition in the Texas action to allege that Thunder Basin failed to adjust the price of coal in relation to its actual production costs, and, therefore, overcharged TUCO millions of dollars under both the First and Second Agreements.

Thunder Basin counterclaimed, contending that its actual production costs were not relevant to pricing. Thunder Basin asserted that only those costs relating to taxes and royalties were to be used in calculating the price of the coal, otherwise using industry indices as a basis for price. Under that formula, Thunder Basin alleged it had correctly charged or even undercharged TUCO.

In August and September 1994, TUCO notified Thunder Basin that it intended to audit Thunder Basin's books and records pursuant to the audit provisions of the Agreements. In May 1995, TUCO sent Thunder Basin a list of the specific documents it wished to review on audit, including all documents relating to coal production costs. Thunder Basin refused to comply. Consistent with its position in the pending Texas lawsuit, Thunder Basin maintained

that TUCO's request for actual costs of production exceeded the scope of the audit provisions because those costs did not affect the coal price. By letter dated June 23, 1995, TUCO asserted that Thunder Basin's failure to provide the requested documents would result in a breach of the audit provisions.

Two days later, Thunder Basin filed a declaratory judgment action in the Wyoming district court naming TUCO and SPS as defendants. Thunder Basin sought a declaration that TUCO's audit request exceeded the scope of the Agreements' audit provisions in asking for actual costs which were unrelated to the price of coal.

SPS responded to Thunder Basin's declaratory judgment action with a motion to dismiss, claiming it was not a signatory of the First or Second Agreements, and, therefore, was not a proper party to the action. In October 1995, Thunder Basin filed a motion for summary judgment asserting it was entitled to judgment as a matter of law regarding the interpretation of the audit provisions. Subsequently, Thunder Basin amended its complaint to assert that SPS was a proper party under the Guaranty and the Conditional Agreement. TUCO and SPS then filed motions to dismiss or stay the Wyoming action because the crucial question, i.e., how the pricing was to be calculated, was at the heart of the earlier-filed Texas lawsuit and properly should be decided by the Texas court.

A few days after Thunder Basin filed its claim in the Wyoming court, TUCO served discovery requests on Thunder Basin in the Texas action. TUCO requested production of all documents regarding the administration of the Agreements, including all "supporting cost data" evidencing Thunder Basin's actual costs of production. Eventually, the same documentation which was the subject of TUCO's audit request was produced in response to the discovery request. Having received the information it wanted,

TUCO formally withdrew the audit request on January 5, 1996.

Hearings on the Motion to Dismiss or Stay the Wyoming proceedings were held on January 8, 1996, and May 9, 1997 [1]. On May 23, 1997, the district court issued a written order denying the motion. In response to this ruling, TUCO amended its answer to assert a counterclaim for declaratory relief against Thunder Basin, alleging that the unambiguous terms of the Agreements required Thunder Basin to maintain and produce actual cost data for producing, processing, and loading coal purchased by TUCO. The amendment was followed by TUCO's cross-motion for summary judgment. The district court heard arguments on the summary judgment motions on August 12, 1997, and on March 6, 1998, issued its order granting Thunder Basin's motion, and denying all of TUCO's pending motions.[2] TUCO and SPS then filed this timely appeal.

## STANDARD OF REVIEW

In a de novo review of the threshold question of jurisdiction, "we examine the policies underlying both the Uniform Declaratory Judgments Act and the doctrine of justiciability to determine if this is a proper case for judicial action." *Reiman Corp. v. City of Cheyenne*, 838 P.2d 1182, 1185 (Wyo. 1992). The district court's decision to stay or dismiss an action due to a pending proceeding, however, is discretionary. *Morris v. Farmers Ins. Exchange*, 771 P.2d 1206, 1213 (Wyo.1989).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.* * *

*Mintun v. State*, 966 P.2d 954, 958 (Wyo. 1998); *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998) (*quoting Martin v. State*, 720

---

1. On February 20, 1997, shortly before the second hearing on the motion to dismiss or stay, SPS withdrew from the Texas suit.

2. After the district court denied the motions to dismiss or stay, SPS filed a renewed Motion to

Dismiss, and TUCO filed a Motion for Leave to File Its Third Amended Answer, a Motion to Join Third Party Defendant, and a Second Motion to Stay Proceedings.

P.2d 894, 897 (Wyo.1986)). Therefore, we review the district court's decision to determine whether the court could reasonably conclude as it did in the situation before it. *Clark v. Gale*, 966 P.2d 431, 435 (Wyo.1998); *Hilterbrand v. State*, 930 P.2d 1248, 1250 (Wyo.1997). However,

> [t]he trial court's exercise of this discretion is subject to searching appellate review and is not given the same deference as is the trial court's exercise of discretion in other contexts. Independent review is justified because the exercise of the trial court's discretion in granting or denying declaratory relief is not dependent upon factors which are difficult for an appellate tribunal to review, such as, for example, factual determinations of credibility.

*Gaiser v. Village of Skokie*, 271 Ill.App.3d 85, 207 Ill.Dec. 749, 648 N.E.2d 205, 210 (1995) (*quoting Chicago & Eastern Illinois Railroad Company v. Reserve Insurance Co.*, 99 Ill.App.3d 433, 54 Ill.Dec. 564, 425 N.E.2d 429, 432 (1981)).

## DISCUSSION

### A. Justiciable Controversy.

Based on several undisputed facts, TUCO and SPS contend that no justiciable controversy existed at the time the Wyoming district court ruled on Thunder Basin's summary judgment motion. First, Appellants argue that because the audit request had been withdrawn, and the documents which were the subject of that request had been produced prior to summary judgment, the question regarding the scope of the audit provision was moot at the time of the district court's ruling. In addition, SPS maintains that Thunder Basin lacked standing to insert SPS into the controversy between it and TUCO.

Summary judgment argument was heard in August 1997 and judgment issued in March 1998. The district court found that "a justiciable controversy exists between the parties as to the interpretation of certain contracts, and declaratory relief should be granted to settle the controversy." Although the district court did not further elucidate its position, its ruling apparently applied to both the Revised Harrington Agreement and the Tolk Agreement. Therefore, on appeal we must look to each of the Agreements individually to determine whether a justiciable controversy existed at the time the district court exercised its jurisdiction.

■ A justiciable controversy must exist before a court may grant declaratory relief. *Reiman*, 838 P.2d at 1185–86; *West Texas Utilities Co. v. Exxon Coal USA, Inc.*, 807 P.2d 932, 938 (Wyo.1991). It is "defined generically as a controversy fit for judicial resolution." *Reiman*, 838 P.2d at 1186. To establish a justiciable controversy under the Uniform Declaratory Judgments Act:

> 1. The parties must have existing and genuine, as distinguished from theoretical, rights or interests.

> 2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

> 3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

> 4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Reiman*, 838 P.2d at 1186 (citing *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo.1974)).

Under the umbrella of the justiciable controversy concept stand "the political question[s] doctrine, the administrative questions doctrine, the advisory opinions doctrine, the feigned and collusive cases doctrine, the doctrine of standing, the doctrine of ripeness, and the doctrine of mootness." *Reiman*, 838 P.2d at 1186. "These doctrines are premised upon jurisprudential principles which are designed to promote judicial economy and the wise exercise of judicial power." *Id.*

**1. The First Agreement (Revised Harrington Agreement).**

■ In this case, Appellants' initial challenge to the jurisdiction of the district court arises under the doctrine of mootness.

The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Wright & Miller § 3533.

*Reiman,* 838 P.2d at 1187 (citations omitted).

It is undisputed that TUCO formally withdrew its audit request under the Agreements on January 6, 1996, and was in the process of reviewing the documentation which was the subject of those requests. Thunder Basin argues, however, that given TUCO's failure to withdraw its claim that Thunder Basin breached the First and Second Agreements, or to further stipulate to the propriety of Thunder Basin's pricing, future audit disputes were likely.

■ We will not interpret the scope of the declaratory judgment statute in a narrow or technical sense as long as the party seeking declaratory relief presents the court with an actual controversy. *Hirschfield v. Board of County Com'rs,* 944 P.2d 1139, 1142 (Wyo. 1997). The controversy, however, must be real. A court should not hear a case where there has been a change in circumstances occurring either before or after a case has been filed that eliminates the controversy. *International Ass'n of Fire Fighters, Local 279 v. Civil Service Comm'n of Fire Dep't of City of Cheyenne,* 702 P.2d 1294, 1297 (Wyo. 1985).

The First Agreement expired on December 31, 1997—three months after the summary judgment hearing and three months before the district court issued its order. The audit requests had been formally withdrawn over a year earlier. If the real dispute in this case is the scope of the audit provisions, as Thunder Basin contends, then the question of future audits under the First Agreement was improbable when summary judgment was argued and became impossible three months prior to the issuance of the court's order. Therefore, this claim was moot at the time the district court issued summary judgment on the audit provisions of the First Agreement. Because no justiciable controversy existed relating to that Agreement, the summary judgment granted in favor of Thunder Basin relating to the Revised Harrington Agreement is vacated.

**2. The Second Agreement (Tolk Agreement).**

■ Unlike the First Agreement, the Second Agreement will remain in effect until at least 2017, and possibly longer. Under the Second Agreement, TUCO is permitted to request an additional audit once each calendar year. Thus, the withdrawal of the audit request did not affect TUCO's right to request audits in the future. The fact that TUCO remained steadfast in a construction of the audit provision contrary to the interpretation given by Thunder Basin presented sufficient controversy for the district court's judgment to effectively operate in terminating that dispute. Therefore, the claim against TUCO regarding the Second Agreement was not moot.

**3. The Conditional Agreement**

■ While Thunder Basin concedes that SPS is not a party to the Second Agreement, it posits that under the Conditional Agreement, SPS, "in effect, assume[s] TUCO's obligations under the Tolk Agreement." Therefore, the district court's declarations concerning TUCO's obligations define SPS's obligations, as well, and Thunder Basin was entitled to include SPS in this action so that SPS will be bound by the court's judgment." SPS, on the other hand, argues it has no involvement in a justiciable controversy relating to the Second Agreement because SPS is not a guarantor of TUCO's performance under that Agreement. SPS points to the fact that the Conditional Agreement specifi-

cally provides that, with limited exceptions irrelevant to this case:

> [N]one of the rights, powers, privileges, duties, liabilities or obligations of Seller [Thunder Basin] or TUCO arising under the Coal Supply Agreement [the Second Agreement] shall be assigned, shall accrue, or shall be otherwise transferred to the parties to the SPSC Coal Supply Agreement [ARCO and SPS] **or shall be assumed by them.**

(Emphasis added.) Because the Conditional Agreement expressly negates SPS's assumption of the duties enumerated in the Second Agreement, Thunder Basin's attempts to bootstrap an interpretation of the SPS Agreement to a construction of the Second Agreement is unavailing.

In essence, Thunder Basin claims it may bring a declaratory judgment action on an unexecuted contract found as an exhibit in a contract between two other parties. This gambit is prevented by the intertwined principles of standing and ripeness.

> The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in which the litigants have little or no interest in vigorously advocating. * * * A litigant is said to have standing when he has a "personal stake in the outcome of the controversy." This personal stake requirement has been described in Wyoming as a "tangible interest" at stake.

*Robinson v. Hamblin,* 914 P.2d 152, 154 (Wyo.1996) (citing *Schulthess v. Carollo,* 832 P.2d 552, 556–57 (Wyo.1992)). When determining standing, the courts "almost invariably" focus on the plaintiff's position in the litigation. 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531, pp. 339–40 (1984).

Thunder Basin, as the plaintiff in this case, is not a party to the Conditional Agreement. Generally, a non-party to a contract has no standing to bring a claim on that contract. *See Central Contractors Co., Inc. v. Paradise Valley Utility Co.,* 634 P.2d 346, 348 (Wyo. 1981). Further, "the Declaratory Judg-

ment[s] Act gives the courts no power to determine future rights or anticipated disputes or controversies." *White v. Board of Land Com'rs,* 595 P.2d 76, 79 (Wyo.1979). *See also Langdon v. Aetna Life Insurance Co.,* 640 P.2d 1092, 1099 (Wyo.1982). Here, the Conditional Agreement cannot be assigned to Thunder Basin. Although ARCO has expressed its intent to assign the SPS Agreement to Thunder Basin in the event it becomes operative, Thunder Basin failed to present any evidence that there is a likelihood of that occurrence.

The SPSC Coal Agreement does not become operative until there has been a breach by TUCO under the Second Agreement. Nothing in the record indicates that TUCO breached, or intends to breach, the Second Agreement in the future. Because the SPS Agreement has not been, and cannot be, assigned to Thunder Basin until certain conditions are met in the future, the "controversy" presented by Thunder Basin relating to SPS is simply too remote and uncertain to justify present adjudication. We find the district court erred in denying SPS's motion to dismiss it from the declaratory judgment action.

## B. Motions to Dismiss or Stay Due To Pending Litigation In Texas.

TUCO asserts that under our holding in *Morris v. Farmers Ins. Exchange,* 771 P.2d 1206 (Wyo.1989), the district court erred in refusing to dismiss or stay the declaratory judgment action due to the pending litigation between the parties in Texas. In *Morris,* an insurance company filed a complaint in a Wyoming district court for declaratory relief to establish that it had no duty to defend or indemnify its insured in a suit pending in another Wyoming district court. The trial court granted summary judgment in favor of the insurance company, holding that the facts at issue showed intentional conduct by the insured as a matter of law, thereby negating a duty to defend or indemnify. *Id.* at 1207.

On appeal, we found the trial court's determination to proceed with the case was an abuse of discretion. *Morris* 771 P.2d. at 1212. Limiting our opinion to the facts of

that case, we held that the trial court should have stayed the declaratory judgment proceeding until the crucial issues in the principal case were determined by the district court presiding over the first-filed case. *Id.* at 1208, 1209. We listed six justifications for taking a more restrictive view of utilizing declaratory judgments:

1. The declaratory judgment action was not intended to be used to force the insured to have a "dress rehearsal" of an issue to be tried in the main case

2. The holding in the declaratory judgment action might inappropriately collaterally estop the parties to the main action as to certain factual issues

3. Such a proceeding would unduly burden the insured and improperly allow the insurer to wrest control of the litigation from the injured party

4. Such a declaratory judgment would violate the principle of judicial economy

5. Such an action would constitute an unwarranted interference with another court's proceedings

6. To the extent the declaratory judgment might resolve an issue adversely to the insured, it would be inherently unfair to force the insured to litigate against the insurance company; ... rather than obtaining the benefit of the company's resources and expertise in defending against the plaintiff[.]

*Morris* 771 P.2d at 1211. We further stated, "The institution of the declaratory judgment action as in the case at bar results in a race to res judicata, or at least collateral estoppel, which is improper." *Id.*

TUCO argues that the same principles which applied in *Morris* should govern our decision in this matter. In support of its position, TUCO directs us to the fact that the same crucial issue in the declaratory judgment claim—the pricing issue—was first raised in the Texas action over eight months before Thunder Basin filed its claim in Wyoming. TUCO charges that Thunder Basin filed the Wyoming action solely to avoid litigating the pricing issue in Texas and to use the decision of the Wyoming court to estop the Texas claims.

Thunder Basin replies that *Morris* should not apply in this case because, unlike *Morris,*

the pending case does not involve an insured and its insurer. Thunder Basin also denies that its actions amount to "procedural fencing," maintaining that the declaratory judgment action was appropriate because Thunder Basin "feared that it might be sued for breach [of the audit provision], and that TUCO might attempt to terminate the Coal Supply Agreements on that basis, if the dispute were not promptly resolved."

 We are not persuaded by Thunder Basin's argument. We see no reason to limit the principles in *Morris* to intrastate actions between an insured and its insurer. Moreover, Thunder Basin's justifications for resisting a stay in the Wyoming action do not rebut TUCO's claim that the initiation of the Wyoming action was a procedural ploy. Thunder Basin's alleged fear of suit for breach of the audit provisions and a subsequent termination of the Agreements rings hollow in light of the history between these parties. TUCO had already sued Thunder Basin in Texas over a year earlier for a material breach of the Coal Supply Agreements claiming a loss of millions of dollars. Still, TUCO had not attempted nor threatened to terminate the Agreements. Thunder Basin's fear is even more questionable when one considers that all audit requests were formally withdrawn at the time the district court considered the motions to stay. Further, TUCO never disputed that the scope of the audit provisions included only those materials relevant to the price of the coal. The real issue in both Texas and Wyoming was the relevancy of actual costs to the price of coal. *See Wilshire Associates v. Grebow,* 64 Cal.App.4th 453, 74 Cal.Rptr.2d 912, 915 (1998) (wife never disputed her share of estate would be liable for judgment against husband; therefore, no actual controversy existed). Indeed, by the time the district court refused to stay this case, the only controversy between Thunder Basin and TUCO was the pricing issue as it affected **future** audit requests by TUCO.

Thunder Basin's insistence that the trial court appropriately refused to stay the action because "the Texas action and this action involve different subject matters and different issues" is contradicted by its own argument. In nearly the same breath, Thunder Basin states, "The district court's

ruling that Thunder Basin had used the proper method for pricing coal by implication determined that Thunder Basin has not overcharged TUCO, and therefore the district court's rulings will have res judicata or collateral estoppel effect in the Texas Action." (*Id.*) Further, we will not characterize attempted utilization of the Wyoming court to usurp the jurisdiction of the Texas court as "judicial efficiency." We prefer to identify the obvious motivation in this instance, a "race to res judicata."

Given the posture of the case before the district court at the time it heard TUCO's request to stay the action, we see no reason why these issues should not have been decided by the Texas court in the context of a remedial dispute which includes all the issues between these parties. We have no doubt that our sister state will competently apply Wyoming law to the contracts at issue. It is unlikely that the "audit issues" would endure after resolution of the Texas action. Even so, awaiting the Texas decision to tie up any loose ends regarding later audit requests would not have prejudiced Thunder Basin.

Instead, Thunder Basin clearly wrested control of the litigation from TUCO's grasp in an attempt to transfer the litigation to a strategically superior forum. This constitutes an unwarranted interference with another court's proceedings which will not be approved in Wyoming. The district court's order denying a stay of the Wyoming action during the pendency of the Texas litigation is, therefore, reversed.

### CONCLUSION

Because TUCO had withdrawn its audit requests and the Revised Harrington Agreement was no longer in effect at the time the district court ruled on summary judgment, the claims relating to the audit request under the Revised Harrington Agreement were moot. Therefore, the district court's ruling on that issue is hereby vacated.

Because SPS was not a party to, nor a guarantor of, the Tolk Agreement, there was no justiciable controversy between Thunder Basin and SPS under the Tolk Agreement. In addition, Thunder Basin lacked standing to bring a claim against SPS relating to the Conditional Agreement or the SPSC Coal Agreement between ARCO and SPS. Thus,

the district court's refusal to dismiss SPS from this action is reversed.

Finally, the declaratory judgment action in Wyoming constituted a transparent attempt to win the race to res judicata. Thunder Basin would have suffered no prejudice by awaiting the resolution of the first-filed Texas action prior to litigation of any remaining claims in Wyoming. The district court abused its discretion in permitting the Wyoming action to continue and, therefore, its summary judgment is vacated, and its order denying the stay is reversed and remanded for further action in accord with this opinion.